Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Avenue 17th Floor
Glendale California 91203
Tel: 323.962.3777
Fax: 323.962.3004
harrisa@harrisandruble.com
pmohan@harrisandruble.com

Attorneys for Plaintiff D. Shinjo

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. SHINJO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RADICALMEDIA, LLC, a, and DOE 1 through and including DOE 10,<br><br>Defendants. | Case No: 2:22-cv-04738-SSS-KK<br>Related Case: 2:21-cv-09632-SSS-KK<br><br>**STIPULATION FOR ORDER GRANTING PLAINTIFF LEAVE TO FILE FIRST AMENDED COMPLAINT; [PROPOSED] ORDER**<br><br>Action filed:  July 11, 2022 |

Plaintiff Daniel Shinjo ("Plaintiff") and Defendant RadicalMedia, LLC ("RM") (collectively, Plaintiff and RM are referred to as the "Parties"), by and through their undersigned counsel of record, hereby stipulate as follows:

WHEREAS, on July 11, 2022, Plaintiff filed a class and collective action complaint (the "Original Complaint.")

WHEREAS, The Original Complaint also alleged a representative claim under the Labor Code Private Attorneys General Act of 2006 ("PAGA"), Cal. Lab. Code. § 2698, et seq.  Plaintiff has given notice to the California Labor and Workforce Development Agency ("LWDA") of alleged violations of the California Labor Code, pursuant to PAGA;

WHEREAS, after meeting and conferring Plaintiff and RM have agreed to stipulate that Plaintiff should be granted leave to file an amended complaint, that includes allegations regarding exhaustion of administrative remedies with respect to the PAGA cause of action;

WHEREAS, without waiver of any defenses to Plaintiff's proposed PAGA or other claim(s), RM agrees that Plaintiff may file the First Amended Complaint ("FAC") attached hereto as **Exhibit 1.**  For the Court, and a redline between the FAC and Original Complaint is attached hereto as **Exhibit 2**; and

WHEREAS, the stay issued by the Court on May 16, 2023, remains in effect notwithstanding the filing of the FAC, and the time for RM to answer or otherwise respond to the FAC shall be July 31, 2023, consistent with the terms of that stay.

///
///
///
///
///
///
///

STIPULATION FOR ORDER GRANTING PLAINTIFF LEAVE TO FILE FIRST AMENDED COMPLAINT; [PROPOSED] ORDER

**NOW THEREFORE, IT IS HEREBY STIPULATED AS FOLLOWS, SUBJECT TO THE COURT'S APPROVAL:**

1. Plaintiff shall be granted leave to file the FAC attached hereto as Exhibit 1;

2. RM shall have until July 31, 2023, to answer or otherwise file and serve any response to the FAC;

**IT IS SO STIPULATED.**


DATED:  May 24, 2023                         HARRIS & RUBLE

                                             *Alan Harris*
                                             _____
                                             Alan Harris
                                             Priya Mohan
                                             *Attorney for Plaintiff Daniel Shinjo*


DATED:  May 24, 2023                         VENABLE LLP

                                             /s/ Rudy G. Klapper
                                             Ryan M. Andrews
                                             Rudy G. Klapper
                                             *Attorney for Defendant*
                                             *RadicalMedia, LLC*


### Local Rule  5-4.3.4 Attestation

The undersigned attests that all other signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.


DATED:  May 24, 2023                         HARRIS & RUBLE

                                             *Alan Harris*
                                             _____
                                             Alan Harris
                                             *Attorney for Plaintiff Daniel Shinjo*

# Exhibit 1

Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Avenue 17th Floor
Glendale California 91203
Tel: 323.962.3777
Fax: 323.962.3004
harrisa@harrisandruble.com
pmohan@harrisandruble.com

Attorneys for Plaintiff D. Shinjo

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. SHINJO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RADICALMEDIA, LLC, and DOE 1 through and including DOE 10,<br><br>Defendants. | Case No: 2:22-CV-04738-SSS-KKx<br>Related Case: 2:21-CV-09632-SSS-KKx<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>1.  Cal. Lab. Code (the "Code") § 203, Continuing Wages<br><br>2.  Code §226(a), Wage Statements<br><br>3.  Code § 226.7 and Wage Order, Failure to Provide Rest Breaks<br><br>4.  Code §§ 1194 and 1198 Failure to Provide Pay Proper Minimum Wages<br><br>5.  Cal. Bus & Prof. Code §§ 17200 *et seq.* – Restitution<br><br>6.  Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*<br><br>7.  Code §§ 2698 *et seq.*, PAGA civil penalties<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Daniel Shinjo ("Shinjo" or "Plaintiff"), by and through his undersigned attorneys, alleges a motion picture industry representative, class and collective action seeking unpaid wages, damages, statutory penalties, attorneys' fees, costs and such other relief as may be appropriate in the circumstances, as follows:

## JURISDICTION AND VENUE

1.     The central issues over which this Court has federal question and supplemental or ancillary jurisdiction are Plaintiff's allegations regarding the tardy payment of earned wages, in violation of the FLSA (Biggs v. Wilson, 1 F.3d 1537, 1541 (9th Cir. 1993) and the California Labor Code (the "Code") requirements for payment of both "continuing wages" and liquidated damages under the minimum wage law; Augustus violations by Defendant's misuse of walkie-talkies and/or cell phones during the physical/on-set production of motion pictures;[1] the defense paying wages with defective wage statements; and the defense responsibility to pay PAGA civil penalties to the Labor and Workforce Development Agency ("LWDA") of the State of California, with Shinjo and other Aggrieved Employees (Aggrieved Employees being those who suffered from one or more of the alleged PAGA violations within the period commencing one year prior to the filing of the Shinjo PAGA Notice to date) to potentially receive a portion of the PAGA recovery.

2.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b). Defendant constitutes an "enterprise" within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203. See 29 U.S.C. § 203(r) (defining "enterprise"). Defendant is engaged in interstate commerce, with annual sales in excess of $1,000,000 and with more than 1000 employees. This Court has federal-question jurisdiction under 28 U.S.C. § 1331. Furthermore, under 28 U.S.C. § 1367, this Court may exercise supplemental

---

[1] The production of a "motion picture" is defined in the Code (the "Code") as "the development, creation, presentation, or broadcasting of theatrical or televised motion pictures, television programs, commercial advertisements, music videos, or any other moving images." Code § 201.5(a)(4). This case is focused on Defendants' production of motion pictures.

jurisdiction over Plaintiff's state-law claims. This Court should exercise its jurisdiction pursuant to 28 U.S.C. § 1367. <u>See</u> 28 U.S.C. § 1367(c) (explaining grounds on which courts may decline to exercise supplemental jurisdiction). Venue as to Defendants is proper in this judicial district. Defendants maintain an office, transact business, have an agent, or are found in the County of Los Angeles and are within the jurisdiction of this Court for purposes of service of process. The violations of the FLSA alleged herein had a direct effect on and were committed within the State of California, impacting Plaintiff and other similarly situated employees.

3.    Emergency Rule 9 as promulgated by the Judicial Council of California provides: "Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." The Advisory Committee Comment notes that: "Emergency rule 9 is intended to apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil cause of action. The term "civil causes of action" includes special proceedings. (See Code Civ. Proc., §§ 312, 363 ["action," as used in title 2 of the code (Of the Time of Commencing Civil Actions), is construed "as including a special proceeding of a civil nature"). . . . The rule also applies to statutes of limitations on filing of causes of action in court found in codes other than the Code of Civil Procedure." Further, the pendency of a class action in California, <u>Divinity v. RM Studio Enterprises, Inc.</u>, Los Angeles Superior Court Case No. 20STCV37526 (filed September 30, 2020) tolls any applicable statutes of limitation implicated by the California state law claims herein.

## **THE PARTIES**

4.    Plaintiff Shinjo is an individual, who, during the time periods relevant to this Complaint, was an employee of Defendant in the County of Los Angeles, State of California. He has been a resident of this judicial district during the relevant period.

5.    RadicalMedia, LLC ("RM") is a Delaware limited liability company, which at all times relevant herein conducted business within the County of Los Angeles, State

of California, continuously since it was founded, having the expertise to produce music videos for the likes of Janet Jackson and Jay-Z, as well as RM television commercials for Verizon, GMC, Taco Bell, Subway, Burger King, Adidas, George Forman Grills, Budweiser, Jack In The Box, Safeway, Bud Lite, and Cadillac, yet nevertheless failing to pay its crew on those motion pictures in timely fashion, leading to its settlement of earlier cases, similar to that now plead, including Greenberg v. EP Mgmt. Servs., LP, Los Angeles Superior Court (Case No. BC237787) and Harrington v. Manpay, LLC, Los Angeles Superior Court (Case No. BC312171).  According to RM:

> The company develops, produces and distributes award-winning projects in a variety of media including television, digital, feature films, music programming, commercials, graphic and interactive design, exhibitions, and live events, with offices in New York, Los Angeles, Berlin, Sydney and Shanghai. . . . The company has been honored with an Academy Award®, Emmys®, a Golden Globe®, Grammys® . . . two Palme d'Ors at the Cannes Lions International Advertising Festival, and just about every other accolade and trophy associated with the advertising, marketing, and programming businesses.

(https://www.linkedin.com/company/radicalmedia/about/)(last accessed June 25, 2022).

6. Defendants Doe One through and including Doe Ten are sued herein under the provisions of section 474 of the California Code of Civil Procedure.  Plaintiff is unaware of the true names, identities or capacities, whether corporate, individual or otherwise, of said fictitiously named defendants, but leave of Court will be prayed to amend this pleading to insert the same herein when finally ascertained.  Plaintiff is informed, believes and thereupon alleges that each of the fictitiously named Defendants is an entity, which during the relevant time period maintained a place of business in the County of Los Angeles of the State of California.

7. Defendants RM and Does One through and including Doe Ten are collectively referred to as the "Defendant" or "Defendants".

FIRST AMENDED COMPLAINT

8.    Plaintiff is informed and believes and thereon allege that all Defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their co-defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

## GENERAL ALLEGATIONS

9.    Code §§226(a)(1) and (5) require that the employer provide its employees with wage statements showing the gross and net wages earned.  Plaintiff's wage statement does not provide the correct amount of gross and net wages earned, as wage statements must show premium wages for missed, tardy or truncated rest breaks and meal periods.  Naranjo v. Spectrum Security Services, 13 Cal. 5th 93 (2022). The wage statements issued by RM to Plaintiff and other employees who worked on motion pictures for it failed to comply.

10.    Code §226(a)(6) requires the employer to provide a wage statement which shows "the inclusive dates of the period for which the employee is paid."  Here, the defense at times, for some employees, only provided the day on which work for the Acura commercial was undertaken, making it impossible for the employee to determine whether they were paid timely or for all accrued overtime during the week at issue.  For example, another member of the April 16, 2022, Acura crew, Kevin Payne, was provided a tardy paycheck, dated May 12, 2022, for a faux "Pay Period" – "04/16/2002 – 04/16/2022," also mailed on or after May 13, 2022.  At least two members of the crew who worked on the April 16, 2022, Acura commercial – Plaintiff Daniel Shinjo and Edward F. Martinez, Jr. – were provided a wage statement with a faux "Pay Period" of "04/10/2022 – 05/21/2022," along with a tardy check, dated May 12, 2022, but not

mailed until on or after May 13, 2022.  As with those issued wage statements which reflected a pay period of a single day, employees who are issued wage statements with faux, long pay periods (as with Plaintiff, 04/10/2022 – 05/21/2022) also have no way in which to determine – from the wage statement alone -- whether the payment is timely. The wage statement issued to Shinjo and other members of the crew as well as other persons who provided services for RM on other motion pictures reveal that Defendant did not properly compensate them for their earned wages for their work for Defendant RM, the paychecks being tardy and unsuccessful in meeting the requirement to reflect earned wages on account of Defendant's failure to provide them with required rest periods and/or meal breaks.

11.    For many years, RM has issued wage statements to its temporary services employees advising them that their "Pay Period" is "W[eekly]." (E.g., RADICAL-MANN 000002).[2]  In addition, pursuant to the provisions of Code section 2810.5, the California Wage Theft Prevention Act, it has advised the temporary services employees that their "Regular pay day" is weekly, on Fridays.  (E.g., RADICAL-MANN 000002). For example, on September 7, 2018, in connection with its responsibilities under the California Wage Theft Prevention Act (WTPA), RM gave formal Notice to a member of its crew for another television commercial – "Cadillac #2753" – that the "Regular pay day" was "Friday."  See RADICAL-MANN 000001.

12.    Section 226(a)(6) violations result in the employees being "deemed to suffer injury" under Code §226(e)(2)(B)(i).

13.    On April 16, 2022, Shinjo was employed by Defendant to provide it with services on a location shoot for an Acura commercial. Shinjo received a wage statement and paycheck for his services, but it was not mailed to him until on or after May 13, 2022, failing the timeliness requirements of Code sections 201.3, 201.5, 203 and/or 204,

---

[2] This reference, along with other, similar ones, is to the RM production of documents in an alpha-numeric sequence, enabling the Parties to identify the source of the materials. Since a protective order has yet to be entered in this case, the document itself, while known to the Defendants, is not yet placed in the record.

1  resulting in FLSA liability for payment of liquidated damages under <u>Biggs v. Wilson</u>, 1

2  F.3d 1537 (1993).

3       14.    On April 16, 2022, Plaintiff worked for Defendant on a motion picture

4  project known as "ACURA #3066" for a single day, after which he was laid off without a

5  return date, at all.  With respect to his work on April 16, 2022, Shinjo was engaged for

6  over eight hours, entitling him to payment of wages in excess of the straight time rate. He

7  and most other crew were issued a walkie-talkie by RM.  Thoughout the workday,

8  Plaintiff and others were expected to and did monitor it.  Shinjo and others were required

9  to and did respond to calls throughout the whole workday.  Nevertheless, they were not

10  provided an additional hour of pay for missed rest breaks.

11       15.    When Plaintiff ceased working for Defendant, he was not timely paid all

12  wages accrued, including minimum wages or overtime, a violation of the FLSA giving

13  rise to a right for liquidated damages. <u>Brooklyn Savings Bank v. O'Neil</u>, 324 U.S. 697,

14  707 (1945)("failure to pay the statutory minimum on time may be . . . detrimental to

15  maintenance of the minimum standard of living 'necessary for health, efficiency, and

16  general well-being of workers' and to the free flow of commerce. . . ."); <u>Biggs v.</u>

17  <u>Wilson</u>;  1998 DOLWH LEXIS 70, *2 (Dep't of Labor Wage & Hour Div. July 20,

18  1998)("It has been our longstanding position that an employer is required to pay

19  employees the full minimum wages and overtime due on the regular payday for the

20  workweek in question. See, for example, Opinion Letter 63 (Nov. 30, 1961), and the

21  Department's interpretative regulations at 29 CFR 778.106 and 790.21(b).")

22       16.    Here, the Defendant permitted Plaintiff and other members of their motion

23  picture crews to perform functions that are normally part of the business of motion

24  picture production.  The Defendants had a duty to ensure that Plaintiff and other crew

25  were properly paid the wages that they had been promised, but RM failed to do so in

26  timely fashion, or failed to do so at all with respect to rest breaks and or meal periods.

27  Defendant RM failed to ensure that Plaintiff and others were timely paid their final

28  wages, with an appropriate wage statement and appropriate rest breaks and meal periods.

17.     As is routine in the motion picture industry (which includes the production of feature films and television programs, as well as commercials and music videos), after a short stint of work (even just a single day), Plaintiff and many others were discharged under Code sections 201.3 and 201.5, when their employment ceased.  Smith v. Superior Court, 39 Cal. 4th 77, 80 (2006) (holding that hair model who worked for one day at a show was discharged at the end of the workday and entitled to penalties under section 203 when she was paid two months later).

18.     It is "an employer's duty under the FLSA to maintain accurate records of its employees' hours" and that duty "is non-delegable." Kuebel v.  Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011).  Although Kuebel establishes that it is solely the employer's duty to keep track of hours worked under the federal FLSA, and although many of Plaintiff's wage-and-hour claims are brought under the Code, the fact remains that Defendant, at all times, was subject to the FLSA and therefore was itself required to keep track of Plaintiff's hours worked.  See Troester v. Starbucks Corp., 5 Cal. 5th 829, 839 (2018) (explaining that, although California's wage-and-hour laws are "more protective than federal law" and that "California is free to offer [employees] greater protection," the FLSA "provide[s] a level of employee protection that a state may not derogate"). Troester, 5 Cal. 5th at 846 ("Nor is it clear why, when it is difficult to keep track of time worked, the employee alone should bear the burden of that difficulty"), 848 ("An employer may be able to customize and adapt available time tracking tools or develop new ones when no off-the-shelf product meets its needs.  And even when neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably estimate work time . . . and to compensate employees for that time."). Marlo v. United Parcel Serv., Inc., No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *3 (C.D. Cal. May 5, 2009) explains that, under California law, "employers must keep track of the hours . . . employees work."

19.     Before an employee starts to work for an employer, the employer is required to have the employee fill out the requisite new-hire paperwork, including the W-4 and I-

9, tasks which were here completed.  (GE 1-2)  See, e.g., Ketchikan Drywall Servs., Inc.
v. Immigration & Customs Enforcement, 725 F.3d 1103, 1113 (9th Cir. 2013) (stating
that 8 U.S.C. § 1324a "clearly makes employers responsible for documenting employee
work authorization" and that, "[w]here [a defendant] cho[oses] to hire employees who
ha[ve] failed to fill out [s]ection 1 [of I-9 Forms] completely, it d[oes] so at its own
peril"); 26 C.F.R. § 31-3402(f)(2)-1 subsec. (a) (stating that a withholding-exemption
certificate must be completed "[o]n or before the date on which an individual commences
employment"); 22 Cal. Code Regs. § 4340-1(a) stating that a withholding-exemption
certificate must be completed "[o]n or before the date on which an individual commences
employment").  If, for example, the employee fails to complete the necessary tax
documents—the employer must follow the guidance from the Internal Revenue Service
and the California Employment Development Department by withholding taxes as if the
employee is single with no withholding allowances.  *See* Internal Revenue Serv., *Topic
Number 753 – Form W-4 – Employee's Withholding Allowance Certificate* (last updated
Mar. 1, 2018), https://www.irs.gov/taxtopics/tc753.  There is an analogous cite from the
California EDD (re defaulting to the single-no-allowances rule):  Cal. Emp't Dev. Dep't,
*Employer's Obligations for Form W-4 or DE 4* (2016), https://www.edd.ca.gov/
pdf_pub_ ctr/ de71.pdf).

20.    In addition, Defendants failed to provide proper rest breaks or meal periods.
In the motion picture industry and in motion pictures produced by RM, the making of a
motion picture is routinely divided into three phases:  pre-production, on-set production
and post-production, with the largest number of individual crew working during on-set
production.

21.    During on-set production, the Production Department (including in relevant
part the First Assistant Director, the Second Assistant Director[s], and Production
Assistants), the Camera Department, the Grip Department, the Electric Department, the
Transportation Department, the Location Department (including the Location Manager
and their assistants as well as the Fire Safety Advisor[s] and off-duty or retired members

of the LAPD) are all issued walkie-talkies or required to man their cell phones (hereinafter, collectively, the "On-Set Communicators").  The On-Set Communicators are required to and do respond to queries and/or instructions at any time from when they commence work at the beginning of the workday of on-set production until they are released at the end of their workday. The practices herein described with respect to walkie-talkie and/or cell phone uses in the motion picture industry are deeply rooted in the history and traditions of the motion picture business. Since crew were required to monitor their walkie-talkies and/or cell phones all day they are entitled to premium wages for Defendants' failure to provide compliant rest breaks and meal periods.

22.    Aggrieved Employees and the 17200 Class have not ever been compensated for with wages for missed, tardy or interrupted rest breaks. Plaintiff and the 17200 Class consistently worked more than 6-hour workdays.  However, they were required to keep their walkie talkies and/or cell phones on their persons, turned on and audible at all times, including during "down time" and/or rest periods and meal breaks, during which time they were precluded from leaving the set.  Accordingly, they were denied their breaks and are entitled to an additional payment of premium wages for workday in excess of six hours, once for each day worked in excess of four hours for rest breaks and six hours for meal periods.  Augustus v. ABM Security Services, Inc., 2 Cal.5th 257 (2016).  Certain RM employees were paid some premium wages for two or more missed, tardy or truncated meals during a seven day workweek, but their wage statements violated Code section 226(a)(9) insofar as the statements failed to show "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

23.    Defendants did not compensate Plaintiff, Aggrieved Employees or Code Class Members on its many motion picture productions as required by the Fair Labor Standards Act or sections 201.3 and 201.5 of the Code.

24.    Defendants failed to properly compensate Plaintiff and other nonexempt workers who performed services for it on the production of motion pictures.  Plaintiff and

the Class Members worked either on the Productions specifically referenced herein, and/or other California motion picture projects, toiling more than six hours in a single day, yet not being paid timely, for missed rest breaks and meal periods, or with appropriate wage statements, all due to Defendant's insufficient funding of the payroll accounting function and desire to make such payments from funds received for each project, all pursuant to a separate budget, rather than from working capital.

25.    For example, in connection with the RM production in or about August and September, 2021, for Apple, Inc. ("Apple") of a motion picture with the "Job Name" of "Tropic", RM routinely required crew to work each day during seven (7) day work weeks, yet then did not pay them in timely fashion.  RM did not timely pay its crew for Apple during the consecutive weeks they worked, from, for example, the weeks ending August 14, 2021, August 21, 2021, and August 28, 2021 (all paid in tardy fashion in violation of the FLSA and in violation of Code section 210) or for the final week on which most of the crew worked, the week ending September 4, 2021 (also paid late in violation of the FLSA and Code section 203).  Further, RM did not pay the crew for any missed, truncated or tardy rest breaks.  RM paid the crew for some, but not all of the missed, truncated or tardy meal periods.  RM did not pay the crew with compliant wage statements, those documents failing to provide correct detail (either proper accounting for accrued meal periods and rest breaks or reporting of "the inclusive dates of the period for which the employee is paid").  Further, with respect to the RM requirement that crew work for seven consecutive days in a row, it appears that RM attempted to manipulate the payroll to avoid or minimize the overtime requirements of Code section 510.  As a result of the RM violation of the requirements of <u>Augustus</u>, the On-Set Communicators were routinely deprived of their meal periods and rest breaks. Based on its systematic Code violations on the Apple "Tropic" motion picture, in light of the requirements of Code section 203, it appears that the entire crew of over 100 workers, or the great majority of them, may be entitled to an additional thirty days of wages, as well as liquidated damages under the FLSA. Specifically, one member of the crew, Fernando Lopez, worked during

the faux "pay period" of "09/01/21 – 09/01/21" but was not paid at all until on or after September 23, 2021, when his check was prepared.  His paycheck for September 1, 2021, should have been prepared for him on or before Friday, September 10, 2021.  Lopez was an on On-Set Communicator on "Tropic" but has yet to be paid his wages on account of missed rest breaks.

26.    On another television commercial for "Cheetos #2918", crew member Kevin T. Payne worked on the faux "Pay Period" of "10/23/2020 – 10/23/2020" yet he was not paid at all until on or after November 9, 2020.  His paycheck for October 23, 2020, should have been prepared for him on or before Friday, October 30, 2020.  Payne was an on On-Set Communicator on the "Cheetos #2918" commercial, but has yet to be paid his wages on account of missed meal periods or rest breaks.

27.    On another television commercial for "Old Navy #2931", crew member Andres Cruz worked on the faux "Pay Period" of "01/26/21 – 01/26/2021" yet he was not paid at all until on or after February 5, 2021. His paycheck for January 26, 2021, should have been prepared for him on or before Friday, February 5, 2021.   Cruz was an on On-Set Communicator on the "Old Navy #2931" commercial, but has yet to be paid his wages on account of missed meal periods or rest breaks.

28.    On another television commercial for "Target #3012", crew member Andres Cruz worked on the faux "Pay Period" of "08/17/2021-08/17/2021" yet he was not paid at all until on or after September 3, 2021.  His paycheck for August 17, 2021, should have been prepared for him on or before Friday, August 27, 2021.  Cruz was an on On-Set Communicator on the "Target #3012" commercial, but has yet to be paid his wages on account of missed rest breaks.

29.    On another television commercial for "BMW #2972", crew member Kevin T. Payne worked on the faux "Pay Period" of "05/14/2021 – 05/15/2021" yet he was not paid at all until on or after May 28, 2021.  His paycheck for May 14-15, 2021, should have been prepared for him on or before Friday, May 21, 2021.  Payne was an on On-Set

Communicator on the "BMW #2972" commercial, but has yet to be paid his wages on account of missed meal periods or rest breaks.

30.    On another television commercial for "LA Tourism # 3019", crew member Kevin T. Payne worked on the "Pay Period" of "10/31/21 – 11/06/2021" yet he was not paid at all until on or after November 18, 2021.  His paycheck for the week ending November 6, 2021, should have been prepared for him on or before Friday, November 12, 2021.  Payne was an on On-Set Communicator on the "LA Tourism #3019" commercial, but has yet to be paid his wages on account of missed rest breaks.

31.    On another television commercial for "Cadillac #2753", crew member John H. Washington worked on the "Pay Period" of "09/08/2018 – 09/08/2018" yet he was not paid all overtime wages until on  or after October 10, 2018. (RADICAL-WASHINGTON 000002). His paycheck for September 8, 2018, should have been prepared for him on or before Friday, September 14, 2018.  Washington was an on On-Set Communicator on the "Cadillac # 2753" commercial, but has yet to be paid his wages on account of missed rest breaks or meal periods.

32.    As another example, in connection with the RM commercial shoot with a RM "Job Name" of "Noom #3018," crew provided services during the "Pay Period" from "09/19/2021-09/25/2021" yet final paychecks were not prepared until well over a week after September 25, 2021, as they were not cut until on or after October 6, 2021.  As a result of the RM violation of the requirements of Augustus, the On-Set Communicators for the Noom production, as well as other recent motion pictures of RM (including, without limitation, motion pictures featuring major companies/brands such as US Cellular, Wrangler, Meijer, Facebook, Nationwide Insurance, Mountain Dew, Old Navy, AT&T, Toyota, Allstate, Cheetos, Lexus, Blue Shield, Oreo, Kraft, Pillsbury, Lincoln, BMW, Dodge, GAP, KIA, McDonald's, Toyota, Ford, Chase Bank, L'Oreal, EBAY, Honda and Jack Daniels) were routinely deprived of their meal periods and rest breaks.

33.    At all relevant times mentioned herein, Wage Order 12 (Motion Picture Industry) of the California Industrial Welfare Commission applied to Plaintiff and

Collective Action Members.  In part, the Wage Order reflects employer obligations

regarding hours and days of work, reporting time pay, records, and rest periods

(obligations which the employer, here, failed to fulfill, both with respect to Plaintiff and

Collective Action Members).  The Wage Order provides, in relevant part:

**3. Hours and Days of Work.**

(A) Daily Overtime-General Provisions

(1) The following overtime provisions are applicable to employees eighteen

(18) years of age or over and to employees sixteen (16) or seventeen (17)

years of age who are not required by law to attend school and are not

otherwise prohibited by law from engaging in the subject work.

Such employees shall not be employed more than eight (8) hours in any

workday or more than forty (40) hours in any workweek unless the

employee receives one and one-half (1 ½) times such employee's regular

rate of pay for all hours worked over forty (40) hours in the workweek Eight

(8) hours of labor constitutes a day's work. Employment beyond eight (8)

hours in any workday or more than six (6) days in any workweek is

permissible provided the employee is compensated for such overtime as

follows:

(a) Employees may be employed up to a maximum of sixteen (16) hours

including meal periods in any one day from the time they are required and

do report until dismissed, provided the employee is compensated for such

overtime at not less than:

(1) For daily employees and weekly employees, excluding weekly

employees guaranteed more than forty (40) hours a workweek and "on call"

employees, one and one-half (1 ½) times the employee's regular rate of pay

for all hours worked in excess of eight (8) hours up to and including twelve

(12) hours in any one workday, and for the first eight (8) hours worked on

the seventh (7th) consecutive day of work in a workweek; and

(2) Double the employee's regular rate of pay for all hours worked in excess of twelve (12) hours in any workday, , and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

(3) Overtime payments shall not be compounded and all payments made by the employer for daily overtime on the basis herein above specified shall be applied toward any sum for weekly overtime.

(4) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one fortieth (1/40) of the employee's weekly salary.

. . .

## 7. Records.

(A) Every employer shall keep accurate information with respect to each employee including the following:

(1) Full name, home address, occupation and social security number.

(2) Birth date, if under 18 years, and designation as a minor.

(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

(4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.

(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.

(6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

. . .

**11. <u>Meal Periods.</u>**

(A) No employer shall employ any person for a work period of more than six (6) hours without a meal period of not less than thirty (30) minutes, nor more than one (1) hour. Subsequent meal period for all employees shall be called not later than six (6) hours after the termination of the preceding meal period.

(B) Unless the employee is relieved of all duty during a thirty (30) minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(C) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

(D*)* In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated.

**12. <u>Rest Periods.</u>**

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

(C) Swimmers, dancers, skaters, and other performers engaged in strenuous physical activities shall have additional interim rest periods during periods of actual rehearsal or shooting.

Cal. Code of Regs., tit. 8, § 11120 ("Wage Order").

34.    At all times relevant herein, Plaintiff was a "temporary services employee" under section 201.3 of the Code, and the Code provided that employees of temporary services employers be paid "no less frequently than weekly." Similarly, section 201.5 of the Code provided in part:

(a) For purposes of this section, the following definitions apply:

(1) "An employee engaged in the production or broadcasting of motion pictures" means an employee to whom both of the following apply:

(A) The employee's job duties relate to or support the production or broadcasting of motion pictures or the facilities or equipment used in the production or broadcasting of motion pictures.

(B) The employee is hired for a period of limited duration to render services relating to or supporting a particular motion picture production or broadcasting project, or is hired on the basis of one or more daily or weekly calls.

(2) "Daily or weekly call" means an employment that, by its terms, will expire at the conclusion of one day or one week, unless renewed.

(3) "Next regular payday" means the day designated by the employer, pursuant to Section 204, for payment of wages earned during the payroll period in which the termination occurs.

(4) "Production or broadcasting of motion pictures" means the development, creation, presentation, or broadcasting of theatrical or televised motion pictures, television programs, commercial advertisements, music videos, or any other moving images, including, but not limited to, productions made for entertainment, commercial, religious, or educational purposes, whether these productions are presented by means of film, tape, live broadcast, cable, satellite transmission, Web cast, or any other technology that is now in use or may be adopted in the future.

(b) An employee engaged in the production or broadcasting of motion pictures whose employment terminates is entitled to receive payment of the wages earned and unpaid at the time of the termination by the next regular payday.

(c) The payment of wages to employees covered by this section may be mailed to the employee or made available to the employee at a location

specified by the employer in the county where the employee was hired or performed labor. The payment shall be deemed to have been made on the date that the employee's wages are mailed to the employee or made available to the employee at the location specified by the employer, whichever is earlier.

(d) For purposes of this section, an employment terminates when the employment relationship ends, whether by discharge, lay off, resignation, completion of employment for a specified term, or otherwise.

(e) Nothing in this section prohibits the parties to a valid collective bargaining agreement from establishing alternative provisions for final payment of wages to employees covered by this section if those provisions do not exceed the time limitation established in Section 204.

Code § 201.5.

35.    Defendants employed individuals such as Plaintiff and similarly situated Code Class and Collective Action Members to work on the production on motion pictures, yet Defendants failed to timely or fully pay them, all in violation, inter alia, of Code sections 201.3 and 201.5.

36.    At all relevant times mentioned herein, section 203 of the Code provided: If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202 and 202.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until action therefore is commenced; but the wages shall not continue for more than 30 days.

Code § 203. By failing to pay Plaintiff and similarly situated Class and Collective Action Members all wages when due at termination, Plaintiff, Class and Collective Action Members are entitled to continuing wages pursuant to section 203 of the Code.

37.    At all times relevant herein, section 204 of the Code provided in part:

All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or
204.2, earned by any person in any employment are due and payable twice
during each calendar month, on days designated in advance by the employer
as the regular paydays. Labor performed between the 1st and 15th days,
inclusive, of any calendar month shall be paid for between the 16th and the
26th day of the month during which the labor was performed, and labor
performed between the 16th and the last day, inclusive, of any calendar
month, shall be paid for between the 1st and 10th day of the following
month.

Code § 204.

38.    In no event should Plaintiff, Class or Collective Action Members have been
paid later than the time periods established by sections 201.3, 201.5 or 204 of the Code,
but certain payments were not made in a timely fashion, all leading to penalties under
sections 203 and 204 of the Code.

39.    At all times relevant herein, section 210 of the Code provided:

In addition to, and entirely independent and apart from, any other penalty
provided in this article, every person who fails to pay the wages of each
employee as provided in Sections 204, 204b, 204.1, 204.2, 205, 205.5, and
1197.5, shall be subject to a civil penalty as follows: (a) For any initial
violation, one hundred dollars ($100) for each failure to pay each employee;
(b) For each subsequent violation, or any willful or intentional violation, two
hundred dollars ($200) for each failure to pay each employee, plus 25
percent of the amount unlawfully withheld.

Code § 210. Further, the Defendants' policy has been to devote insufficient resources to
the payroll accounting function, with the inevitable result that employees are routinely
paid in tardy fashion, in violation of sections 203 and 204 of the Code, and otherwise in
violation of the Code.

FIRST AMENDED COMPLAINT

40.     Code sections 226.7, 512 and Section 12 of the Wage Order require an
employer to pay an additional hour of compensation for each rest break and/or meal
period the employer fails to provide. Section 12 requires that: "No employer shall employ
any person for a work period of more than six (6) hours without a meal period of not less
than thirty (30) minutes, nor more than one (1) hour. Subsequent meal period for all
employees shall be called not later than six (6) hours after the termination of the
preceding meal period."

41.     Here, Defendants failed to apprise Plaintiff and all 17200 Class Members of
their rights associated with meal periods and rest breaks and failed to provide timely meal
periods and rest breaks.  On information and belief, prior to the filing of this lawsuit
Defendants have never paid a Plaintiff or 17200 Class Members one hour of pay at the
employees' regular rate of compensation for any workday in which a proper rest break
was not provided.  Plaintiff and all 17200 Class Members are entitled to restitution of the
sums owing to them on account of missed meal periods and rest breaks.

42.     Defendant had a pattern and practice of not providing compliant rest breaks
or meal periods or paying the one-hour of premium wages for each rest break violation to
which Plaintiff and §17200 Class Members was entitled.

43.     Defendants failed to properly notify Plaintiff and Members of the 17200
Class of their rights associated with meal periods and rest breaks.

44.     At all relevant times mentioned herein, section 226.7 of the Code provided:

(a)  As used in this section, "recovery period" means a cooldown period
afforded an employee to prevent heat illness.

(b)  An employer shall not require an employee to work during a meal or rest
or recovery period mandated pursuant to an applicable statute, or applicable
regulation, standard, or order of the Industrial Welfare Commission, the
Occupational Safety and Health Standards Board, or the Division of
Occupational Safety and Health.

(c)  If an employer fails to provide an employee a meal or rest or recovery

period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Code § 226.7.

45.    At all relevant times mentioned herein, section 510(a) of the Code provided: Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of at least one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

Code § 510.

46.    Plaintiff and certain Class and Collective Action Members were not timely paid proper overtime wages to which they were entitled in violation of the FLSA and Code §§ 510, 515 and 1194.  Both late payment and nonpayment of overtime wages for all hours worked violates the overtime wage statute.  Defendants are also subject to the civil penalties for which provision is made in Code § 558 by failing to pay Class and Collective Action Members their overtime wages.

47.    At all relevant times mentioned herein, section 1194 of the Code provided:
Notwithstanding any agreement to work for a lesser wage, any employee
receiving less than the legal minimum wage or the legal overtime
compensation applicable to the employee is entitled to recover in a civil
action the unpaid balance of the full amount of this minimum wage or
overtime compensation, including interest thereon, reasonable attorney's
fees, and costs of suit.

Code § 1194.

48.    At all relevant times mentioned herein, section 2802 of the Code provided in
part:

(a) An employer shall indemnify his or her employee for all necessary
expenditures or losses incurred by the employee in direct consequence of the
discharge of his or duties . . . .

(b) All awards made by a court . . . for reimbursement of necessary
expenditures under this section shall carry interest at the same rate as
judgments in civil actions.  Interest shall accrue from the date on which the
employee incurred the necessary expenditure or loss.

(c) For purposes of this section, the term "necessary expenditures or
losses" shall include all reasonable costs, including, but not limited to,
attorney's fees incurred by the employee enforcing rights granted by this
section.

Code § 2802. Defendants failed to reimburse Plaintiff, Class and Collective Action
Members similarly situated employees for necessary business expenses incurred in the
performance of their duties, such as for the use of a personal cell phone and for motion
picture production equipment and supplies.

49.    At all relevant times mentioned herein, section 558 of the Code provided:
Any employer or other person acting on behalf of an employer who violates,

FIRST AMENDED COMPLAINT

or causes to be violated, a section of this chapter or any provision regulating

hours and days of work in any order of the Industrial Welfare Commission

shall be subject to a civil penalty as follows:  (1) For any initial violation,

fifty dollars ($50) for each underpaid employee for each pay period for

which the employee was underpaid in addition to an amount sufficient to

recover underpaid wages.  (2) For each subsequent violation, one hundred

dollars ($100) for each underpaid employee for each pay period for which

the employee was underpaid in addition to an amount sufficient to recover

underpaid wages.  (3) Wages recovered pursuant to this section shall be paid

to the affected employee.

Code § 558.  Defendants are the employers or other persons acting on behalf of an

employer who violated, or caused to be violated the relevant sections of the Code

referenced herein.

50.    At all relevant times mentioned herein, section 558.1 of the Code provided:

(a) Any employer or other person acting on behalf of an employer, who

violates, or causes to be violated,  any provision regulating minimum wages

or hours and days of work in any order of the Industrial Welfare

Commission, or violates, or causes to be violated, Sections 203, 226, 226.7,

1193.6, 1194, or 2802, may be held liable as the employer for such violation.

(b) For purposes of this section, the term "other person acting on behalf of

an employer" is limited to a natural person who is an owner, director,

officer, or managing agent of the employer, and the term "managing agent"

has the same meaning as in subdivision (b) of Section 3294 of the Civil

Code.

(c) Nothing in this section shall be construed to limit the definition of

employer under existing law.

Code § 558.1.  Defendants' personnel were on the set of the Acura Production and

actively participated in the Production.

## COLLECTIVE-ACTION ALLEGATIONS

51.     Plaintiff seeks to represent all nonexempt employees who worked for Defendants during the period beginning no earlier than three years prior to the filing hereof to the mailing of the FLSA Opt-In Notice (such persons are referred to hereafter as "Collective Action Members.").

52.     Plaintiff is similarly situated to the Collective Action Members in that Plaintiff and the Collective Action Members were employed by Defendants and in that Defendants did not pay Plaintiff and the Collective Action Members their overtime and/or minimum wages when due. Plaintiff's consent to an FLSA collective action is attached hereto as **Exhibit 1.**

53.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b).

54.     All Collective Action Members should be given notice and be allowed to give their consent in writing to participate in—in other words, to opt into—the collective action pursuant to 29 U.S.C. § 216(b).

55.     This action has been brought and may be properly maintained as a Collective Action under the provisions of the FLSA because there is a well-defined community of interest in the litigation and the identity of the members of the proposed Collective Action group is easily ascertainable.

56.     Defendants, as to Plaintiff and Collective Action Members, failed to comply with the FLSA and, accordingly, Defendants' failure to make timely payment entitles Plaintiff and each Collective Action Member to statutory damages and/or liquidated damages.

## CLASS-ACTION ALLEGATIONS

57.     With respect to persons employed in the State of California, Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff seeks to represent a "17200 Class" composed of and defined as follows:

For the period four years and 180 days prior to the filling of this Complaint to date, all persons who were On-Set Communicators (such persons are referred to hereafter as 17200 Class Members, and such period is referred to hereafter as the 17200 Class Period).

Plaintiff seeks to represent a "226 Class" composed of and defined as follows:

For the period one year prior to the filling of this Complaint to date, all persons paid wages on account of services provided for Defendants in the production of Motion Pictures (such persons are referred to hereafter as 226 Class Members, and such period is referred to hereafter as the 226 Class Period).

Plaintiff seeks to represent a "Code Class" composed of and defined as follows:

For the period three years and 180 days prior to the filling of this Complaint to date, all persons who were not provided with wages within seven days after completion of their last workweek for RM (such persons are referred to hereafter as Code Class Members, and such period is referred to hereafter as the Code Class Period).

**A. Numerosity**

58.    The potential members of each Class as defined are so numerous that joinder of all the members of any Class is impracticable. The number of Class Members is great, but not so great as to make the class unmanageable.  It, therefore, is impractical to join each Class Member as a named plaintiff.  Accordingly, utilization of a class action is the most economically feasible means of determining the merits of this litigation.

59.    Despite the size of the proposed Classes, the Class Members are readily ascertainable through an examination of the records that Defendants are required by law to keep.  See Wage Order 12 at Para. 7 ("Records").  Likewise, the dollar amount owed to each Class Member is readily ascertainable by an examination of those same records. For example, with respect to Defendant's violations of section 226(a)(6) of the Code, the damages owing to each Class Member equals the sum of $50 (for the initial wage statement issued to the employee during the period commencing one year prior to the

filing of the Complaint) and the product of the number of further wage statements issued to the employee and $100, with a per employee cap of $4,000.

**Commonality**

60.    There are questions of law and fact common to each Class that predominate over any questions affecting only individual Class Members.

61.    These common questions of law and fact include, without limitation:

   a.  Whether Defendants failed to pay all wages in a timely fashion in violation of sections 201.3, 201.5, 203 and/or 204 of the Code.

   b.  Whether Defendants' failure to provide accurate itemized wage statements to each and every employee violates Code section 226(a).

   c.  Whether Defendants untimely and/or nonpayment of wages give rise to liquidated damages for failure to pay minimum wages under Code section 1194.2.

   d.  Whether Defendants' failure to provide rest breaks to each employee violates Code section 226.7.

   e.  Whether the crew are temporary service employees as referenced in Code section 201.3.

**Typicality**

62.    There is a well-defined community of interest in the questions of law and fact common to the Class Members.

63.    The claims of the named Plaintiff are typical of the claims of each Class, which claims all arise from the same general operative facts, namely, Defendants did not compensate its employees as required by the Code and applicable Wage Order.  Plaintiff and all members of the Classes sustained injuries and damages arising out of and caused by Defendants in violation of laws, regulations that have the force and effect of law, and statutes as alleged herein.  Plaintiff has no conflict of interest with the other Class Members and is able to represent the Class Members' interests fairly and adequately.

1

**Adequacy of Representation**

2  64.   Plaintiff will fairly and adequately represent and protect the interests of the

3  members of each Class. Counsel who represents Plaintiff is sufficiently competent and

4  experienced in decades of litigation of large employment and other class actions, both in

5  state and federal courts.  Neither Plaintiff nor his counsel have any conflict with the

6  members of the Classes.

7  65.   Plaintiff is an adequate class representative and has no known conflicts with

8  any members of the Classes.  Plaintiff worked as an On-Set Communicator.  He seeks

9  certification of three classes.

10  66.   With respect to shortcomings alleged with respect to wage statements,

11  Plaintiff seeks to represent a "226 Class" as the wage statements do not provide the data

12  as required by Code §226 (a)(1), (5), (6) or (9).

13  67.   With respect to the alleged tardy payment of final wages, Plaintiff seeks to

14  represent a "Code Class." Late in the last century, motion picture producers secured as

15  exemption from Code §201, requiring immediate payment of employees who have been

16  laid off.  The revised statute permitted an additional twenty-four hours for payment of

17  crew members when the production was concluded.  Motion picture companies ignored

18  this slight advantage, instead routinely paying laid off crew in the regular pay cycle, or

19  later, often, as here, many weeks after the work had been completed.  Litigation ensued,[3]

20  resulting in an industry-wide settlement of the Greenberg case, after which further

21  legislative relief was secured by employers in the entertainment industry. Section 201.5

22  of the Code was amended to permit payment of final wages "by the next regular payday."

23  Code §201.5(b).  Thereafter, in reaction to Smith v. Superior Court, the commercial

24

25  [3]  Bithell v. E.P. Mgmt. Servs., 2007 Cal. App. Unpub. LEXIS 9706, *3 (2006) ("On October 2, 2000, plaintiff Greenberg  filed this class action (the Greenberg claims). In the

26  original complaint, plaintiff alleged that a purported defendant class of employers in the motion picture industry violated former Code section 201.5  (which the Legislature

27  amended on May 19, 1998) by failing to pay discharged employees' wages due and owing within 24 hours after discharge.") Another, similar case against RM was, Alderson

28  v. Avalon Payroll Services, Inc., Los Angeles Superior Court (BC347925).

industry secured a new statute, Code §201.3, permitting temporary services employers

such as RM to pay cast and crew in the week following completion of their services.

https://www.littler.com/new-california-paycheck-law-aimed-temp-industry-creates-risk-

broad-range-industries (last accessed June 25, 2022) and

https://www.jacksonlewis.com/resources-publication/californias-paycheck-rule-

temporary-workers-take-effect-new-years-day (last accessed June 25, 2022).

68.    Finally, with respect to the rest break issues, Plaintiff seeks to represent a

"17200 Class." Plaintiff contends that since On-Set Communicators were required to and

did monitor their walkie-talkies and/or cell phones all day they are entitled to premium

wages for Defendants' failure to provide compliant rest breaks and meal periods.

Augustus v. ABM Security Services, Inc., 2 Cal.5th 257 (2016).

**Superiority of Class Action**

69.    A class action is superior to other available means for the fair and efficient

adjudication of this controversy.  Individual joinder of all Class Members is not

practicable, and questions of law and fact common to the Class predominate over any

questions affecting only individual members of the Class.  Each member of the Class has

been damaged and is entitled to recovery by reason of Defendants' illegal policy and/or

practice of failing to pay hourly wages, failing to pay overtime wages, failing to provide

Class Members rest periods without legal compensation.  Class action treatment will

allow those similarly situated persons to litigate their claims in the manner that is most

efficient and economical for the parties and the judicial system. Plaintiff is unaware of

any difficulties that are likely to be construed in the management of this action that would

preclude its maintenance as a class action.  The disposition of all claims of the members

of the Class in a class action, rather than in individual actions, benefits the parties and the

Court.  The interest of the Class Members in controlling the prosecution of separate

claims against Defendants is small when compared with the efficiency of a class action.

**FIRST CAUSE OF ACTION**
(Continuing Wages, Code §§201.3, 201.5, 203 and/or 204
On Behalf of Plaintiff and Code Class Against All Defendants)

70.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

71.    Defendants employed Plaintiff and Code Class Action Members. Plaintiff and Code Class Members were not timely paid all wages accrued upon separation from employment.

72.    For example, with respect to services provided on Saturday, April 16, 2022, RM issued a wage statement to Plaintiff Shinjo, but not until on or after May 13, 2022, tardy by some three weeks.  Plaintiff and other similarly situated Class Members, paid later than the Friday after the prior Sunday to Saturday workweek during which they completed their last day of work for Defendants, are all entitled to the penalties for which provision is made by Code section 203.

73.    Defendants' failure to compensate Plaintiff and Code Class Members within the time for which provision is made by sections 201.3 and 201.5 of the Code, despite their knowledge of their obligation to do so, was and is "willful" as the word is used in section 203.

74.    Pursuant to section 203 of the Code, Plaintiff and Code Class Members are entitled to continuing wages from Defendants in an amount according to proof.  Plaintiff and Code Class Members are also entitled to recover costs and reasonable attorneys' fees under section 218.5 of the Code.

### SECOND CAUSE OF ACTION
(Failure to Provide Compliant Wage Statements or Pay Stubs, Code § 226(a)
On Behalf of Plaintiff and 226 Class Members Against Defendants)

75.    Plaintiff incorporates by reference each and every allegation set forth in this Complaint as though fully set forth herein.

76.    Defendants failed to provide Plaintiff and 226 Class Members with wage statements conforming to the requirements of section 226(a)(1), (5), (6) or (9) of the Code.

77.    The foregoing was intentional misconduct of Defendants that injured

Plaintiff and 226 Class Members insofar as they were deprived of information to which they were legally entitled, including but not limited to the required data, such as gross and net wages earned.

78.    The failure of Defendants to provide compliant wage statements violates section 226(a) of the Code.  Accordingly, Plaintiff and 226 Class Members are entitled to damages in an amount according to proof and costs and reasonable attorney's fees in accordance with the provisions of Code section 226(e), all in a sum according to proof. Plaintiff is entitled to an amount according to proof of at least $50, not including  interest thereon, reasonable attorneys' fees and cost of suit.

### **THIRD CAUSE OF ACTION**
(Failure to Provide Rest Breaks, Code § 226.7 and IWC Wage Order 12)
Liquidated Damages On Behalf of Plaintiff and 17200 Class Against Defendants)

79.    Plaintiff incorporates by reference each and every allegation set forth in this Complaint as though fully set forth herein.

80.    At all times herein relevant, sections 226.7 of the Code and IWC Wage Order 12 provided that employees must receive rest periods of at the rate of ten (10) minutes net rest time per four (4) hours worked, or major fraction thereof.

81.    By its failure to provide required rest breaks to Plaintiff and 17200 Class Members, Defendants willfully violated the provisions of Code sections 226.7 and IWC Wage Order 12. The defense misconduct in this regard, as well as with meal periods owed to other Aggrieved employees–depriving the workers of fully-compliant meal periods and rest breaks so they might retain a sufficient degree of repose and relaxation required to function at a high level – is unfair to the workers and the general public as it is contrary to established public policy and may be deemed unsafe, immoral, unethical, oppressive and unscrupulous.  By diminishing one's opportunity to have a respite and take a breather, the defense policies cause injury to Plaintiff, the members of the 17200 Class and the general public.  The work here at issue is strenuous and quite frequently involves lengthy overtime, taking place at set locations which require the workers to drive to and from the

place of work, locations for which public transport is utterly impractical and leading to the possibility of traffic accidents and physical injury to completely innocent members of the general public, as well as the Defendant's workers.  For example, in the filming of the Acura commercial on April 16, 2022, Shinjo and other members of the crew were required to work for more than eight hours on most, if not all, of their workdays.

82.    Plaintiff and 17200 Class Members were not permitted to leave the set of the Production for any purported rest periods or meal breaks. They were required to monitor and be available via walkie-talkie and/or cell phone at all times.

83.    Because Defendants failed to properly provide the proper rest breaks or meal periods, Defendants are responsible to Plaintiff and 17200 Class Members for one hour of additional pay at their regular rate of compensation for each workday during which they worked for four or more hours, pursuant to Code section 226.7 and IWC Wage Order.

84.    As a result of the unlawful acts of Defendants, Plaintiff and 17200 Class Members have been deprived of premium wages, and/or other compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, and costs.

### FOURTH CAUSE OF ACTION
(Damages for Unpaid Minimum Wages, Code §§ 1194, 1194.2 and 1198
On Behalf of Plaintiff and Code Class Members Against All Defendants)

85.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

86.    Plaintiff and the 17200 Class Members worked many hours for Defendants, without compensation for work performed, as required by law. Both late payment and non-payment of minimum wages violate the state statute requiring the payment of a minimum hourly wage, the former giving rise as here to a claim for liquidated damages.

87.    Plaintiff and 17200 Class Members are entitled to recover liquidated damages under section 1194.2 of the Code in an amount according to proof.  Plaintiff and 17200 Class Members are also entitled to recover costs and reasonable attorneys' fees under section 1194 of the Code.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIFTH CAUSE OF ACTION**

(Unfair Business Practices Business and Professions Code section 17200 *et seq.*
On Behalf of Plaintiff and 17200 Class Against Defendants)

88.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

89.    Business and Professions Code section 17200 *et seq.* prohibits acts of unfair competition, including any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200 *et seq.*  Plaintiff alleges that Defendants engaged in unfair business practices in California by the above-described failure to timely pay all premium wages due on account of the failure of Defendants to provide proper rest breaks and/or meal periods to On-Set Communicators.  Under this Cause of Action Plaintiff seeks restitution of these unpaid wages, for his account and for the 17200 Class.

90.    Defendants' violation of California wage and hour laws as herein articulated constitutes a business practice for the reasons set forth above and because Defendants' aforementioned acts and omissions were done repeatedly over a significant period of time, and in a systematic manner, to the detriment of Plaintiff, 17200 Class Members, their families and the general public.  On Set Communicators are routinely deprived of rest breaks, all to the detriment of public safety, as hereinabove described.

91.    As a result of Defendants' unfair and unlawful business practices, Defendants have reaped unfair and illegal profits during the relevant time period herein at the expense of Plaintiff and the Collective Action Members and members of the public. Defendants should be made to disgorge its ill-gotten gains and to restore them to Plaintiff and 17200 Class Members**.**

92.    The actions of Defendants entitle Plaintiff to seek the remedies available under section 17200 *et seq.*  Plaintiff seeks full restitution of said amounts from Defendants, as necessary and according to proof, to restore any and all amounts— including interest—withheld, acquired, or converted by Defendants by means of the unfair practices complained of herein.  Plaintiff, on behalf of himself, as well as on behalf

of the general public, further seeks attorney's fees and costs pursuant to sections 218.5 of the Code and 1021.5 of the Code of Civil Procedure.

## SIXTH CAUSE OF ACTION

(Fair Labor Standards Act On Behalf of Plaintiff and Collective
Action Members Against All Defendants)

93.    Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

94.    Plaintiff is informed and believes, and on that basis alleges, that Defendants are employers engaged in an enterprise in interstate commerce pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

95.    Plaintiff was not timely paid his wages. Plaintiff and Collective Action Members worked many hours each day during their employment as herein alleged.

96.    Under the FLSA, Plaintiff and Collective Action Members are entitled to recover from Defendants their liquidated damages for hours worked, as well as costs and attorney's fees.

97.    Defendants failed to compensate Plaintiff and Collective Action Members as required by the FLSA.

98.    Defendants' violations were willful and intentional.

99.    Plaintiff and Collective Action Members are entitled to damages for unpaid wages and/or the associated liquidated damages in an amount to be proven at trial.

100.    Plaintiff  brings this claim on a collective-action basis pursuant to the FLSA. The FLSA permits an employee to bring an action for unpaid wages on "behalf of himself . . . and other employees similarly situated," so long as all similarly situated employees "give[] [their] consent in writing to become . . . a party."  29 U.S.C. § 216(b). On information and belief, none were timely paid all wages as required by sections 201, 202, 203 or 204 of the Code.

## SEVENTH CAUSE OF ACTION
(PAGA On Behalf of the State of California, Plaintiff and
Aggrieved Employees Against All Defendants)

101.    Plaintiff realleges and incorporates herein by reference the allegations
contained in this Complaint as though fully set forth herein.

102.    Pursuant to section 2699.3(a)(1) of the Code, by certified mail posted on July
12, 2022, Plaintiff gave written notice by online filing to the California Labor and
Workforce Development Agency ("LWDA") of the specific provisions of the Code alleged
to have been violated by Defendant, including the theories set forth in this Complaint. At
that same time, pursuant to section 2699.3(a)((1)(B) Plaintiff sent by certified mail a filing
fee of $75 to the LWDA. Also on that day, Plaintiff gave written notice by certified mail to
Defendant of the specific provisions of the Code alleged to have been violated by
Defendant.

103.    Under PAGA, "[t]he agency shall notify the employer and the aggrieved
employee or representative by certified mail that it does not intend to investigate the
alleged violation within 60 calendar days of the postmark date of the notice received
pursuant to paragraph (1). Upon receipt of that notice or if no notice is provided within
65 calendar days of the postmark date of the notice given pursuant to paragraph (1), the
aggrieved employee may commence a civil action pursuant to Section 2699." Code §
2699.3(a)(2)(A).  Since more than 65 calendar days have passed since the notice was
sent, and no notice was provided by the LWDA, Plaintiff may amend this civil action
pursuant to Code Section 2699.

104.    Plaintiff is informed and believes and thereon alleges that Defendant has
routinely failed to provide Plaintiff and other Aggrieved Employees with proper itemized
wage statements, final wages, minimum wages, and premium wages owing on account of
requiring On Set Communicators to monito their walkie-talkies and/or cell phones
throughout the day, even during down time and faux rest breaks and/or meal periods. The
foregoing caused Plaintiff to suffer actual injury sufficient to support Article III standing.

105.    Plaintiff alleges that Defendant violated PAGA through violations of the

Code and through violations of IWC Wage Order 12. "PAGA actions can serve to *indirectly* enforce certain wage order provisions by enforcing *statutes* that require compliance with wage orders (e.g., § 1198, which prohibits longer work hours than those fixed by wage order or employment under conditions prohibited by a wage order)." Thurman v. Bayshore Transit Mgmt., Inc., 203 Cal. App. 4th 1112, 1132 (2012).

106.    Plaintiff is an "aggrieved employee" under PAGA, as he was employed by Defendants during the applicable statutory period and suffered the Code Violations set forth herein. Accordingly, he seeks to recover on behalf of himself, the LWDA and all other current and former Aggrieved Employees of Defendant, the civil penalties for which provision is made by PAGA, as well as reasonable attorney's fees and costs.

107.    Plaintiff seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in Arias v. Superior Court, 46 Cal.4th 969 (2009). Therefore, class certification of the PAGA claims is not required.

108.    Plaintiff seeks to recover civil penalties pursuant to PAGA for violations of the following Code provisions:

a.  failure to timely pay wages, including wages owing on account of underpayment of premium wages owing on account of inappropriate rest breaks and/or meal periods as well as accrued and unpaid overtime in violation of Code §§ 201.3, 201.5, 203, 204, 210;

b.  failure to provide itemized wage statements to Aggrieved Employees in violation of Code §§ 226(a) and 226.3;

c.  failure to timely pay minimum wages to Aggrieved Employees in violation of Code §§ 510, 558, 1194, 1197 and/or 1198.

109.    With respect to violations of Code §§ 510, Code § 558 imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) for initial violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period for which the

employee was underpaid in addition to an amount sufficient to recover underpaid wages.

110.   With respect to violations of Code § 226(a), section 2699(f) of the Code provides for a default civil penalty when one is not otherwise provided.

111.   With respect to violations of Code § 246(h), Code § 248.5 imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) per aggrieved employee for the first violation, not to exceed ($4,000) per aggrieved employee for all violations of Code § 246 and section 2699(f) of the Code provides for a default civil penalty when one is not otherwise provided.

112.   With respect to violations of Code § 1174, Code § 1174.5 imposes a civil penalty of $500.

**WHEREFORE**, Plaintiff prays judgment as follows:

1.   That the Court certify a Class and Collective Action.

2.   That, under the First Cause of Action, it be adjudged that the failure of Defendants to make payment of Plaintiff's and Code Class Members' wages was in violation of sections 201.3, 201.5 and/or 204 of the Code, and was "willful" as that word is used in section 203 of the Code, and that the Court enter judgment against Defendants in favor of Plaintiff and Code Class Members. That judgment be entered in favor of Plaintiff and Code Class Members in an amount prescribed by section 203 of the Code, and costs and reasonable attorneys' fees in accordance with the provisions of Code section 218.5, all in a sum of at least $575,000.

3.   That, under the Second Cause of Action, this Court enter judgment in favor of Plaintiff and 226 Class Members and award them their damages, penalties, and costs of suit, all according to proof pursuant to section 218.5 and other relevant sections of the Code, in an amount of at least $1,000.

4.   That, under the Third Cause of Action, this Court enter judgment in favor of Plaintiff and 17200 Class Members and award them their damages, penalties, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Code, all in an amount of at least $10,000.

5.      That, under the Fourth Cause of Action, this Court enter judgment in favor of Plaintiff and 17200 Class Members and award them their damages, penalties, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Code, all in an amount of at least $10,000.

6.      That, under the Fifth Cause of Action, this Court enter judgment in favor of Plaintiff and Code Class Members in the amount of liquidated damages for tardy payment of minimum wages according to proof, including interest thereon, reasonable attorneys' fees and cost of suit, and enter judgment against Defendants in the amount of damages according to proof, interest thereon, reasonable attorneys' fees and cost of suit, pursuant to section 218.5, 1194, 1194.2 and other relevant sections of the Code.

7.      That, under the Sixth Cause of Action, this Court enter judgment in favor of Plaintiff and Collective Action Members against all Defendants in an amount according to proof, interest thereon, costs and reasonable attorney's fees in accordance with the Fair Labor Standards Act.

8.      That, with respect to the Seventh Cause of Action, this Court enter judgment in favor of Plaintiff and Aggrieved Employees against all Defendants in an amount according to proof, interest thereon, costs and reasonable attorney's fees in accordance with the PAGA, against Defendant.

9.      For such further relief as the Court may order, attorney's fees, costs, and interest pursuant to Code sections 218.5 and 218.6, and Code of Civil Procedure section 1021.5, in an amount according to proof.


DATED:  May 19, 2023                              HARRIS & RUBLE

                                                 *Alan Harris*
                                                 Alan Harris
                                                 *Attorney for Plaintiff*

1

**INDEX OF EXHIBITS**

2

**Exhibit 1** – Plaintiff Shinjo's FLSA Opt-In

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

# FLSA CONSENT FORM

Pursuant to the provisions of 29 U.S.C. § 216(b), the Fair Labor Standards

Act, I hereby consent to be a party plaintiff to this action.

5/18/2022
_____
Date

Daniel K. Shinjo
_____
Print Name

_____
Signature

Exhibit 2

Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
HARRIS & RUBLE
655 North Central Avenue 17th Floor
Glendale California 91203
Tel: 323.962.3777
Fax: 323.962.3004
harrisa@harrisandruble.com
pmohan@harrisandruble.com

Attorneys for Plaintiff D. Shinjo

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D. SHINJO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RADICALMEDIA, LLC, and DOE 1 through and including DOE 10,<br><br>Defendants. | Case No: 2:22-CV-04738-SSS-KKx<br>Related Case: 2:21-CV-09632-SSS-KKx<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>1.  Cal. Lab. Code (the "Code") § 203, Continuing Wages<br><br>2.  Code §226(a), Wage Statements<br><br>3.  Code § 226.7 and Wage Order, Failure to Provide Rest Breaks<br><br>4.  Code §§ 1194 and 1198 Failure to Provide Pay Proper Minimum Wages<br><br>5.  Cal. Bus & Prof. Code §§ 17200 *et seq.* – Restitution<br><br>6.  Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*<br><br>7.  Code §§ 2698 *et seq.,* PAGA civil penalties<br><br>**JURY TRIAL DEMANDED** |

1

2       Plaintiff Daniel Shinjo ("Shinjo" or "Plaintiff"), by and through his undersigned

3   attorneys, alleges a motion picture industry representative, class and collective action

4   seeking unpaid wages, damages, statutory penalties, attorneys' fees, costs and such other

5   relief as may be appropriate in the circumstances, as follows:

6                        **JURISDICTION AND VENUE**

7       1.      The central issues over which this Court has federal question and

8   supplemental or ancillary jurisdiction are Plaintiff's allegations regarding the tardy

9   payment of earned wages, in violation of the FLSA (<u>Biggs v. Wilson</u>, 1 F.3d 1537, 1541

10  (9th Cir. 1993) and the California Labor Code (the "Code") requirements for payment of

11  both "continuing wages" and liquidated damages under the minimum wage law;

12  <u>Augustus</u> violations by Defendant's misuse of walkie-talkies and/or cell phones during

13  the physical/on-set production of motion pictures;[1] the defense paying wages with

14  defective wage statements; and ~~potentially,~~ the defense responsibility to pay PAGA civil

15  penalties to the Labor and Workforce Development Agency ("LWDA") of the State of

16  California, with Shinjo and other Aggrieved Employees (Aggrieved Employees being

17  those who suffered from one or more of the alleged PAGA violations within the period

18  commencing one year prior to the filing of the Shinjo PAGA Notice to date) to

19  potentially receive a portion of the PAGA recovery.

20      2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b).

21  Defendant constitutes an "enterprise" within the meaning of the Fair Labor Standards

22  Act, 29 U.S.C. § 203.  <u>See</u> 29 U.S.C. § 203(r) (defining "enterprise").  Defendant is

23  engaged in interstate commerce, with annual sales in excess of $1,000,000 and with more

24  than 1000 employees.  This Court has federal-question jurisdiction under 28 U.S.C.

25

26  _____
    [1] The production of a "motion picture" is defined in the Code (the "Code") as "the
27  development, creation, presentation, or broadcasting of theatrical or televised motion
    pictures, television programs, commercial advertisements, music videos, or any other
28  moving images." Code § 201.5(a)(4).  This case is focused on Defendants' production of
    motion pictures.

                              2

1    § 1331.  Furthermore, under 28 U.S.C. § 1367, this Court may exercise supplemental

2    jurisdiction over Plaintiff's state-law claims.  This Court should exercise its jurisdiction

3    pursuant to 28 U.S.C. § 1367.  <u>See</u> 28 U.S.C. § 1367(c) (explaining grounds on which

4    courts may decline to exercise supplemental jurisdiction). Venue as to Defendants is

5    proper in this judicial district.  Defendants maintain an office, transact business, have an

6    agent, or are found in the County of Los Angeles and are within the jurisdiction of this

7    Court for purposes of service of process.  The violations of the FLSA alleged herein had

8    a direct effect on and were committed within the State of California, impacting Plaintiff

9    and other similarly situated employees.

10        3.    Emergency Rule 9 as promulgated by the Judicial Council of California

11    provides:  "Notwithstanding any other law, the statutes of limitations and repose for civil

12    causes of action that exceed 180 days are tolled from April 6, 2020, until October 1,

13    2020."  The Advisory Committee Comment notes that:  "Emergency rule 9 is intended to

14    apply broadly to toll any statute of limitations on the filing of a pleading in court

15    asserting a civil cause of action. The term "civil causes of action" includes special

16    proceedings. (See Code Civ. Proc., §§ 312, 363 ["action," as used in title 2 of the code

17    (Of the Time of Commencing Civil Actions), is construed "as including a special

18    proceeding of a civil nature"). . . . The rule also applies to statutes of limitations on filing

19    of causes of action in court found in codes other than the Code of Civil Procedure."

20    Further, the pendency of a class action in California, <u>Divinity v. RM Studio Enterprises,</u>

21    <u>Inc.,</u> Los Angeles Superior Court Case No. 20STCV37526 (filed September 30, 2020)

22    tolls any applicable statutes of limitation implicated by the California state law claims

23    herein.

24                                    **THE PARTIES**

25        4.    Plaintiff Shinjo is an individual, who, during the time periods relevant to this

26    Complaint, was an employee of Defendant in the County of Los Angeles, State of

27    California.  He has been a resident of this judicial district during the relevant period.

28        5.    RadicalMedia, LLC ("RM") is a Delaware limited liability company, which

1    at all times relevant herein conducted business within the County of Los Angeles, State
2    of California, continuously since it was founded, having the expertise to produce music
3    videos for the likes of Janet Jackson and Jay-Z, as well as RM television commercials for
4    Verizon, GMC, Taco Bell, Subway, Burger King, Adidas, George Forman Grills,
5    Budweiser, Jack In The Box, Safeway, Bud Lite, and Cadillac, yet nevertheless failing to
6    pay its crew on those motion pictures in timely fashion, leading to its settlement of earlier
7    cases, similar to that now plead, including Greenberg v. EP Mgmt. Servs., LP, Los
8    Angeles Superior Court (Case No. BC237787) and Harrington v. Manpay, LLC, Los
9    Angeles Superior Court (Case No. BC312171).  According to RM:

10           The company develops, produces and distributes award-winning projects in a
11           variety of media including television, digital, feature films, music programming,
12           commercials, graphic and interactive design, exhibitions, and live events, with
13           offices in New York, Los Angeles, Berlin, Sydney and Shanghai. . . . The company
14           has been honored with an Academy Award®, Emmys®, a Golden Globe®,
15           Grammys® . . . two Palme d'Ors at the Cannes Lions International Advertising
16           Festival, and just about every other accolade and trophy associated with the
17           advertising, marketing, and programming businesses.
18    (https://www.linkedin.com/company/radicalmedia/about/)(last accessed June 25, 2022).

19           6.      Defendants Doe One through and including Doe Ten are sued herein under
20    the provisions of section 474 of the California Code of Civil Procedure.  Plaintiff is
21    unaware of the true names, identities or capacities, whether corporate, individual or
22    otherwise, of said fictitiously named defendants, but leave of Court will be prayed to
23    amend this pleading to insert the same herein when finally ascertained.  Plaintiff is
24    informed, believes and thereupon alleges that each of the fictitiously named Defendants
25    is an entity, which during the relevant time period maintained a place of business in the
26    County of Los Angeles of the State of California.

27           7.      Defendants RM and Does One through and including Doe Ten are
28    collectively referred to as the "Defendant" or "Defendants".

8.    Plaintiff is informed and believes and thereon allege that all Defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification of their co-defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

## GENERAL ALLEGATIONS

9.    Code §§226(a)(1) and (5) require that the employer provide its employees with wage statements showing the gross and net wages earned.  Plaintiff's wage statement does not provide the correct amount of gross and net wages earned, as wage statements must show premium wages for missed, tardy or truncated rest breaks and meal periods.  Naranjo v. Spectrum Security Services, 13 Cal. 5th 93 (2022). The wage statements issued by RM to Plaintiff and other employees who worked on motion pictures for it failed to comply.

10.    Code §226(a)(6) requires the employer to provide a wage statement which shows "the inclusive dates of the period for which the employee is paid."  Here, the defense at times, for some employees, only provided the day on which work for the Acura commercial was undertaken, making it impossible for the employee to determine whether they were paid timely or for all accrued overtime during the week at issue.  For example, another member of the April 16, 2022, Acura crew, Kevin Payne, was provided a tardy paycheck, dated May 12, 2022, for a faux "Pay Period" – "04/16/2002 – 04/16/2022," also mailed on or after May 13, 2022.  At least two members of the crew who worked on the April 16, 2022, Acura commercial – Plaintiff Daniel Shinjo and Edward F. Martinez, Jr. – were provided a wage statement with a faux "Pay Period" of "04/10/2022 – 05/21/2022," along with a tardy check, dated May 12, 2022, but not

mailed until on or after May 13, 2022.  As with those issued wage statements which reflected a pay period of a single day, employees who are issued wage statements with faux, long pay periods (as with Plaintiff, 04/10/2022 – 05/21/2022) also have no way in which to determine – from the wage statement alone -- whether the payment is timely. The wage statement issued to Shinjo and other members of the crew as well as other persons who provided services for RM on other motion pictures reveal that Defendant did not properly compensate them for their earned wages for their work for Defendant RM, the paychecks being tardy and unsuccessful in meeting the requirement to reflect earned wages on account of Defendant's failure to provide them with required rest periods and/or meal breaks.

11.    For many years, RM has issued wage statements to its temporary services employees advising them that their "Pay Period" is "W[eekly]." (E.g., RADICAL-MANN 000002).[2]  In addition, pursuant to the provisions of Code section 2810.5, the California Wage Theft Prevention Act, it has advised the temporary services employees that their "Regular pay day" is weekly, on Fridays.  (E.g., RADICAL-MANN 000002). For example, on September 7, 2018, in connection with its responsibilities under the California Wage Theft Prevention Act (WTPA), RM gave formal Notice to a member of its crew for another television commercial – "Cadillac #2753" – that the "Regular pay day" was "Friday."  See RADICAL-MANN 000001.

12.    Section 226(a)(6) violations result in the employees being "deemed to suffer injury" under Code §226(e)(2)(B)(i).

13.    On April 16, 2022, Shinjo was employed by Defendant to provide it with services on a location shoot for an Acura commercial. Shinjo received a wage statement and paycheck for his services, but it was not mailed to him until on or after May 13, 2022, failing the timeliness requirements of Code sections 201.3, 201.5, 203 and/or 204,

---

[2] This reference, along with other, similar ones, is to the RM production of documents in an alpha-numeric sequence, enabling the Parties to identify the source of the materials. Since a protective order has yet to be entered in this case, the document itself, while known to the Defendants, is not yet placed in the record.

1    resulting in FLSA liability for payment of liquidated damages under Biggs v. Wilson, 1

2    F.3d 1537 (1993).

3        14.    On April 16, 2022, Plaintiff worked for Defendant on a motion picture

4    project known as "ACURA #3066" for a single day, after which he was laid off without a

5    return date, at all.  With respect to his work on April 16, 2022, Shinjo was engaged for

6    over eight hours, entitling him to payment of wages in excess of the straight time rate. He

7    and most other crew were issued a walkie-talkie by RM.  Thoughout the workday,

8    Plaintiff and others were expected to and did monitor it.  Shinjo and others were required

9    to and did respond to calls throughout the whole workday.  Nevertheless, they were not

10   provided an additional hour of pay for missed rest breaks.

11       15.    When Plaintiff ceased working for Defendant, he was not timely paid all

12   wages accrued, including minimum wages or overtime, a violation of the FLSA giving

13   rise to a right for liquidated damages. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697,

14   707 (1945)("failure to pay the statutory minimum on time may be . . . detrimental to

15   maintenance of the minimum standard of living 'necessary for health, efficiency, and

16   general well-being of workers' and to the free flow of commerce. . . ."); Biggs v.

17   Wilson;  1998 DOLWH LEXIS 70, *2 (Dep't of Labor Wage & Hour Div. July 20,

18   1998)("It has been our longstanding position that an employer is required to pay

19   employees the full minimum wages and overtime due on the regular payday for the

20   workweek in question. See, for example, Opinion Letter 63 (Nov. 30, 1961), and the

21   Department's interpretative regulations at 29 CFR 778.106 and 790.21(b).")

22       16.    Here, the Defendant permitted Plaintiff and other members of their motion

23   picture crews to perform functions that are normally part of the business of motion

24   picture production.  The Defendants had a duty to ensure that Plaintiff and other crew

25   were properly paid the wages that they had been promised, but RM failed to do so in

26   timely fashion, or failed to do so at all with respect to rest breaks and or meal periods.

27   Defendant RM failed to ensure that Plaintiff and others were timely paid their final

28   wages, with an appropriate wage statement and appropriate rest breaks and meal periods.

17.    As is routine in the motion picture industry (which includes the production of feature films and television programs, as well as commercials and music videos), after a short stint of work (even just a single day), Plaintiff and many others were discharged under Code sections 201.3 and 201.5, when their employment ceased.  Smith v. Superior Court, 39 Cal. 4th 77, 80 (2006) (holding that hair model who worked for one day at a show was discharged at the end of the workday and entitled to penalties under section 203 when she was paid two months later).

18.    It is "an employer's duty under the FLSA to maintain accurate records of its employees' hours" and that duty "is non-delegable." Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011).  Although Kuebel establishes that it is solely the employer's duty to keep track of hours worked under the federal FLSA, and although many of Plaintiff's wage-and-hour claims are brought under the Code, the fact remains that Defendant, at all times, was subject to the FLSA and therefore was itself required to keep track of Plaintiff's hours worked.  See Troester v. Starbucks Corp., 5 Cal. 5th 829, 839 (2018) (explaining that, although California's wage-and-hour laws are "more protective than federal law" and that "California is free to offer [employees] greater protection," the FLSA "provide[s] a level of employee protection that a state may not derogate"). Troester, 5 Cal. 5th at 846 ("Nor is it clear why, when it is difficult to keep track of time worked, the employee alone should bear the burden of that difficulty"), 848 ("An employer may be able to customize and adapt available time tracking tools or develop new ones when no off-the-shelf product meets its needs.  And even when neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably estimate work time . . . and to compensate employees for that time."). Marlo v. United Parcel Serv., Inc., No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *3 (C.D. Cal. May 5, 2009) explains that, under California law, "employers must keep track of the hours . . . employees work."

19.    Before an employee starts to work for an employer, the employer is required to have the employee fill out the requisite new-hire paperwork, including the W-4 and I-

1   9, tasks which were here completed.  (GE 1-2)  <u>See</u>, <u>e.g.</u>, <u>Ketchikan Drywall Servs., Inc.</u>

2   <u>v. Immigration & Customs Enforcement</u>, 725 F.3d 1103, 1113 (9th Cir. 2013) (stating

3   that 8 U.S.C. § 1324a "clearly makes employers responsible for documenting employee

4   work authorization" and that, "[w]here [a defendant] cho[oses] to hire employees who

5   ha[ve] failed to fill out [s]ection 1 [of I-9 Forms] completely, it d[oes] so at its own

6   peril"); 26 C.F.R. § 31-3402(f)(2)-1 subsec. (a) (stating that a withholding-exemption

7   certificate must be completed "[o]n or before the date on which an individual commences

8   employment"); 22 Cal. Code Regs. § 4340-1(a) stating that a withholding-exemption

9   certificate must be completed "[o]n or before the date on which an individual commences

10  employment").  If, for example, the employee fails to complete the necessary tax

11  documents—the employer must follow the guidance from the Internal Revenue Service

12  and the California Employment Development Department by withholding taxes as if the

13  employee is single with no withholding allowances.  *See* Internal Revenue Serv., *Topic*

14  *Number 753 – Form W-4 – Employee's Withholding Allowance Certificate* (last updated

15  Mar. 1, 2018), https://www.irs.gov/taxtopics/tc753.  There is an analogous cite from the

16  California EDD (re defaulting to the single-no-allowances rule):  Cal. Emp't Dev. Dep't,

17  *Employer's Obligations for Form W-4 or DE 4* (2016), https://www.edd.ca.gov/

18  pdf_pub_ ctr/ de71.pdf).

19      20.    In addition, Defendants failed to provide proper rest breaks or meal periods.

20  In the motion picture industry and in motion pictures produced by RM, the making of a

21  motion picture is routinely divided into three phases:  pre-production, on-set production

22  and post-production, with the largest number of individual crew working during on-set

23  production.

24      21.    During on-set production, the Production Department (including in relevant

25  part the First Assistant Director, the Second Assistant Director[s], and Production

26  Assistants), the Camera Department, the Grip Department, the Electric Department, the

27  Transportation Department, the Location Department (including the Location Manager

28  and their assistants as well as the Fire Safety Advisor[s] and off-duty or retired members

1  of the LAPD) are all issued walkie-talkies or required to man their cell phones

2  (hereinafter, collectively, the "On-Set Communicators"). The On-Set Communicators are

3  required to and do respond to queries and/or instructions at any time from when they

4  commence work at the beginning of the workday of on-set production until they are

5  released at the end of their workday. The practices herein described with respect to

6  walkie-talkie and/or cell phone uses in the motion picture industry are deeply rooted in

7  the history and traditions of the motion picture business. Since crew were required to

8  monitor their walkie-talkies and/or cell phones all day they are entitled to premium wages

9  for Defendants' failure to provide compliant rest breaks and meal periods.

10      22.    Aggrieved Employees and the 17200 Class have not ever been compensated

11  for with wages for missed, tardy or interrupted rest breaks. Plaintiff and the 17200 Class

12  consistently worked more than 6-hour workdays.  However, they were required to keep

13  their walkie talkies and/or cell phones on their persons, turned on and audible at all times,

14  including during "down time" and/or rest periods and meal breaks, during which time

15  they were precluded from leaving the set.  Accordingly, they were denied their breaks

16  and are entitled to an additional payment of premium wages for workday in excess of six

17  hours, once for each day worked in excess of four hours for rest breaks and six hours for

18  meal periods.  Augustus v. ABM Security Services, Inc., 2 Cal.5th 257 (2016).  Certain

19  RM employees were paid some premium wages for two or more missed, tardy or

20  truncated meals during a seven day workweek, but their wage statements violated Code

21  section 226(a)(9) insofar as the statements failed to show "all applicable hourly rates in

22  effect during the pay period and the corresponding number of hours worked at each

23  hourly rate by the employee."

24      23.    Defendants did not compensate Plaintiff, Aggrieved Employees or Code

25  Class Members on its many motion picture productions as required by the Fair Labor

26  Standards Act or sections 201.3 and 201.5 of the Code.

27      24.    Defendants failed to properly compensate Plaintiff and other nonexempt

28  workers who performed services for it on the production of motion pictures.  Plaintiff and

1  the Class Members worked either on the Productions specifically referenced herein,

2  and/or other California motion picture projects, toiling more than six hours in a single

3  day, yet not being paid timely, for missed rest breaks and meal periods, or with

4  appropriate wage statements, all due to Defendant's insufficient funding of the payroll

5  accounting function and desire to make such payments from funds received for each

6  project, all pursuant to a separate budget, rather than from working capital.

7        25.    For example, in connection with the RM production in or about August and

8  September, 2021, for Apple, Inc. ("Apple") of a motion picture with the "Job Name" of

9  "Tropic", RM routinely required crew to work each day during seven (7) day work

10  weeks, yet then did not pay them in timely fashion.  RM did not timely pay its crew for

11  Apple during the consecutive weeks they worked, from, for example, the weeks ending

12  August 14, 2021, August 21, 2021, and August 28, 2021 (all paid in tardy fashion in

13  violation of the FLSA and in violation of Code section 210) or for the final week on

14  which most of the crew worked, the week ending September 4, 2021 (also paid late in

15  violation of the FLSA and Code section 203).  Further, RM did not pay the crew for any

16  missed, truncated or tardy rest breaks.  RM paid the crew for some, but not all of the

17  missed, truncated or tardy meal periods.  RM did not pay the crew with compliant wage

18  statements, those documents failing to provide correct detail (either proper accounting for

19  accrued meal periods and rest breaks or reporting of "the inclusive dates of the period for

20  which the employee is paid").  Further, with respect to the RM requirement that crew

21  work for seven consecutive days in a row, it appears that RM attempted to manipulate the

22  payroll to avoid or minimize the overtime requirements of Code section 510.  As a result

23  of the RM violation of the requirements of Augustus, the On-Set Communicators were

24  routinely deprived of their meal periods and rest breaks. Based on its systematic Code

25  violations on the Apple "Tropic" motion picture, in light of the requirements of Code

26  section 203, it appears that the entire crew of over 100 workers, or the great majority of

27  them, may be entitled to an additional thirty days of wages, as well as liquidated damages

28  under the FLSA. Specifically, one member of the crew, Fernando Lopez, worked during

1   the faux "pay period" of "09/01/21 – 09/01/21" but was not paid at all until on or after

2   September 23, 2021, when his check was prepared.  His paycheck for September 1, 2021,

3   should have been prepared for him on or before Friday, September 10, 2021.  Lopez was

4   an on On-Set Communicator on "Tropic" but has yet to be paid his wages on account of

5   missed rest breaks.

6       26.    On another television commercial for "Cheetos #2918", crew member Kevin

7   T. Payne worked on the faux "Pay Period" of "10/23/2020 – 10/23/2020" yet he was not

8   paid at all until on or after November 9, 2020.  His paycheck for October 23, 2020,

9   should have been prepared for him on or before Friday, October 30, 2020.  Payne was an

10  on On-Set Communicator on the "Cheetos #2918" commercial, but has yet to be paid his

11  wages on account of missed meal periods or rest breaks.

12      27.    On another television commercial for "Old Navy #2931", crew member

13  Andres Cruz worked on the faux "Pay Period" of "01/26/21 – 01/26/2021" yet he was not

14  paid at all until on or after February 5, 2021. His paycheck for January 26, 2021, should

15  have been prepared for him on or before Friday, February 5, 2021.   Cruz was an on On-

16  Set Communicator on the "Old Navy #2931" commercial, but has yet to be paid his

17  wages on account of missed meal periods or rest breaks.

18      28.    On another television commercial for "Target #3012", crew member Andres

19  Cruz worked on the faux "Pay Period" of "08/17/2021-08/17/2021" yet he was not paid

20  at all until on or after September 3, 2021.  His paycheck for August 17, 2021, should

21  have been prepared for him on or before Friday, August 27, 2021.  Cruz was an on On-

22  Set Communicator on the "Target #3012" commercial, but has yet to be paid his wages

23  on account of missed rest breaks.

24      29.    On another television commercial for "BMW #2972", crew member Kevin

25  T. Payne worked on the faux "Pay Period" of "05/14/2021 – 05/15/2021" yet he was not

26  paid at all until on or after May 28, 2021.  His paycheck for May 14-15, 2021, should

27  have been prepared for him on or before Friday, May 21, 2021.  Payne was an on On-Set

28

Communicator on the "BMW #2972" commercial, but has yet to be paid his wages on account of missed meal periods or rest breaks.

30.    On another television commercial for "LA Tourism # 3019", crew member Kevin T. Payne worked on the "Pay Period" of "10/31/21 – 11/06/2021" yet he was not paid at all until on or after November 18, 2021.  His paycheck for the week ending November 6, 2021, should have been prepared for him on or before Friday, November 12, 2021.  Payne was an on On-Set Communicator on the "LA Tourism #3019" commercial, but has yet to be paid his wages on account of missed rest breaks.

31.    On another television commercial for "Cadillac #2753", crew member John H. Washington worked on the "Pay Period" of "09/08/2018 – 09/08/2018" yet he was not paid all overtime wages until on  or after October 10, 2018. (RADICAL-WASHINGTON 000002). His paycheck for September 8, 2018, should have been prepared for him on or before Friday, September 14, 2018.  Washington was an on On-Set Communicator on the "Cadillac # 2753" commercial, but has yet to be paid his wages on account of missed rest breaks or meal periods.

32.    As another example, in connection with the RM commercial shoot with a RM "Job Name" of "Noom #3018," crew provided services during the "Pay Period" from "09/19/2021-09/25/2021" yet final paychecks were not prepared until well over a week after September 25, 2021, as they were not cut until on or after October 6, 2021.  As a result of the RM violation of the requirements of Augustus, the On-Set Communicators for the Noom production, as well as other recent motion pictures of RM (including, without limitation, motion pictures featuring major companies/brands such as US Cellular, Wrangler, Meijer, Facebook, Nationwide Insurance, Mountain Dew, Old Navy, AT&T, Toyota, Allstate, Cheetos, Lexus, Blue Shield, Oreo, Kraft, Pillsbury, Lincoln, BMW, Dodge, GAP, KIA, McDonald's, Toyota, Ford, Chase Bank, L'Oreal, EBAY, Honda and Jack Daniels) were routinely deprived of their meal periods and rest breaks.

33.    At all relevant times mentioned herein, Wage Order 12 (Motion Picture Industry) of the California Industrial Welfare Commission applied to Plaintiff and

1  Collective Action Members.  In part, the Wage Order reflects employer obligations

2  regarding hours and days of work, reporting time pay, records, and rest periods

3  (obligations which the employer, here, failed to fulfill, both with respect to Plaintiff and

4  Collective Action Members).  The Wage Order provides, in relevant part:

5  **3. Hours and Days of Work.**

6  (A) Daily Overtime-General Provisions

7  (1) The following overtime provisions are applicable to employees eighteen

8  (18) years of age or over and to employees sixteen (16) or seventeen (17)

9  years of age who are not required by law to attend school and are not

10  otherwise prohibited by law from engaging in the subject work.

11  Such employees shall not be employed more than eight (8) hours in any

12  workday or more than forty (40) hours in any workweek unless the

13  employee receives one and one-half (1 ½) times such employee's regular

14  rate of pay for all hours worked over forty (40) hours in the workweek Eight

15  (8) hours of labor constitutes a day's work. Employment beyond eight (8)

16  hours in any workday or more than six (6) days in any workweek is

17  permissible provided the employee is compensated for such overtime as

18  follows:

19  (a) Employees may be employed up to a maximum of sixteen (16) hours

20  including meal periods in any one day from the time they are required and

21  do report until dismissed, provided the employee is compensated for such

22  overtime at not less than:

23  (1) For daily employees and weekly employees, excluding weekly

24  employees guaranteed more than forty (40) hours a workweek and "on call"

25  employees, one and one-half (1 ½) times the employee's regular rate of pay

26  for all hours worked in excess of eight (8) hours up to and including twelve

27  (12) hours in any one workday, and for the first eight (8) hours worked on

28  the seventh (7th) consecutive day of work in a workweek; and

(2) Double the employee's regular rate of pay for all hours worked in excess
of twelve (12) hours in any workday, , and for all hours worked in excess of
eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

(3) Overtime payments shall not be compounded and all payments made by
the employer for daily overtime on the basis herein above specified shall be
applied toward any sum for weekly overtime.

(4) The overtime rate of compensation required to be paid to a nonexempt
full-time salaried employee shall be computed by using the employee's
regular hourly salary as one fortieth (1/40) of the employee's weekly salary.

. . .

**7. Records.**

(A) Every employer shall keep accurate information with respect to each
employee including the following:

(1) Full name, home address, occupation and social security number.

(2) Birth date, if under 18 years, and designation as a minor.

(3) Time records showing when the employee begins and ends each work
period. Meal periods, split shift intervals and total daily hours worked shall
also be recorded. Meal periods during which operations cease and authorized
rest periods need not be recorded.

(4) Total wages paid each payroll period, including value of board, lodging,
or other compensation actually furnished to the employee.

(5) Total hours worked in the payroll period and applicable rates of pay.
This information shall be made readily available to the employee upon
reasonable request.

(6) When a piece rate or incentive plan is in operation, piece rates or an
explanation of the incentive plan formula shall be provided to employees.
An accurate production record shall be maintained by the employer.

(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

. . .

**11. <u>Meal Periods.</u>**

(A) No employer shall employ any person for a work period of more than six (6) hours without a meal period of not less than thirty (30) minutes, nor more than one (1) hour. Subsequent meal period for all employees shall be called not later than six (6) hours after the termination of the preceding meal period.

(B) Unless the employee is relieved of all duty during a thirty (30) minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(C) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

(D) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated.

**12. Rest Periods.**

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

(C) Swimmers, dancers, skaters, and other performers engaged in strenuous physical activities shall have additional interim rest periods during periods of actual rehearsal or shooting.

Cal. Code of Regs., tit. 8, § 11120 ("Wage Order").

34.    At all times relevant herein, Plaintiff was a "temporary services employee" under section 201.3 of the Code, and the Code provided that employees of temporary services employers be paid "no less frequently than weekly." Similarly, section 201.5 of the Code provided in part:

(a) For purposes of this section, the following definitions apply:

(1) "An employee engaged in the production or broadcasting of motion

pictures" means an employee to whom both of the following apply:

(A) The employee's job duties relate to or support the production or

broadcasting of motion pictures or the facilities or equipment used in the

production or broadcasting of motion pictures.

(B) The employee is hired for a period of limited duration to render services

relating to or supporting a particular motion picture production or

broadcasting project, or is hired on the basis of one or more daily or weekly

calls.

(2) "Daily or weekly call" means an employment that, by its terms, will

expire at the conclusion of one day or one week, unless renewed.

(3) "Next regular payday" means the day designated by the employer,

pursuant to Section 204, for payment of wages earned during the payroll

period in which the termination occurs.

(4) "Production or broadcasting of motion pictures" means the development,

creation, presentation, or broadcasting of theatrical or televised motion

pictures, television programs, commercial advertisements, music videos, or

any other moving images, including, but not limited to, productions made

for entertainment, commercial, religious, or educational purposes, whether

these productions are presented by means of film, tape, live broadcast, cable,

satellite transmission, Web cast, or any other technology that is now in use

or may be adopted in the future.

(b) An employee engaged in the production or broadcasting of motion

pictures whose employment terminates is entitled to receive payment of the

wages earned and unpaid at the time of the termination by the next regular

payday.

(c) The payment of wages to employees covered by this section may be

mailed to the employee or made available to the employee at a location

1    specified by the employer in the county where the employee was hired or

2    performed labor. The payment shall be deemed to have been made on the

3    date that the employee's wages are mailed to the employee or made

4    available to the employee at the location specified by the employer,

5    whichever is earlier.

6    (d) For purposes of this section, an employment terminates when the

7    employment relationship ends, whether by discharge, lay off, resignation,

8    completion of employment for a specified term, or otherwise.

9    (e) Nothing in this section prohibits the parties to a valid collective

10    bargaining agreement from establishing alternative provisions for final

11    payment of wages to employees covered by this section if those provisions

12    do not exceed the time limitation established in Section 204.

13  Code § 201.5.

14       35.    Defendants employed individuals such as Plaintiff and similarly situated

15  Code Class and Collective Action Members to work on the production on motion

16  pictures, yet Defendants failed to timely or fully pay them, all in violation, inter alia, of

17  Code sections 201.3 and 201.5.

18       36.    At all relevant times mentioned herein, section 203 of the Code provided:

19    If an employer willfully fails to pay, without abatement or reduction, in

20    accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202 and

21    202.5, any wages of an employee who is discharged or who quits, the wages

22    of the employee shall continue as a penalty from the due date thereof at the

23    same rate until paid or until action therefore is commenced; but the wages

24    shall not continue for more than 30 days.

25  Code § 203. By failing to pay Plaintiff and similarly situated Class and Collective Action

26  Members all wages when due at termination, Plaintiff, Class and Collective Action

27  Members are entitled to continuing wages pursuant to section 203 of the Code.

28       37.    At all times relevant herein, section 204 of the Code provided in part:

1    All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or

2    204.2, earned by any person in any employment are due and payable twice

3    during each calendar month, on days designated in advance by the employer

4    as the regular paydays. Labor performed between the 1st and 15th days,

5    inclusive, of any calendar month shall be paid for between the 16th and the

6    26th day of the month during which the labor was performed, and labor

7    performed between the 16th and the last day, inclusive, of any calendar

8    month, shall be paid for between the 1st and 10th day of the following

9    month.

10   Code § 204.

11   38.    In no event should Plaintiff, Class or Collective Action Members have been

12   paid later than the time periods established by sections 201.3, 201.5 or 204 of the Code,

13   but certain payments were not made in a timely fashion, all leading to penalties under

14   sections 203 and 204 of the Code.

15   39.    At all times relevant herein, section 210 of the Code provided:

16   In addition to, and entirely independent and apart from, any other penalty

17   provided in this article, every person who fails to pay the wages of each

18   employee as provided in Sections 204, 204b, 204.1, 204.2, 205, 205.5, and

19   1197.5, shall be subject to a civil penalty as follows: (a) For any initial

20   violation, one hundred dollars ($100) for each failure to pay each employee;

21   (b) For each subsequent violation, or any willful or intentional violation, two

22   hundred dollars ($200) for each failure to pay each employee, plus 25

23   percent of the amount unlawfully withheld.

24   Code § 210. Further, the Defendants' policy has been to devote insufficient resources to

25   the payroll accounting function, with the inevitable result that employees are routinely

26   paid in tardy fashion, in violation of sections 203 and 204 of the Code, and otherwise in

27   violation of the Code.

28   40.    Code sections 226.7, 512 and Section 12 of the Wage Order require an

20

FIRST AMENDED COMPLAINT

1   employer to pay an additional hour of compensation for each rest break and/or meal

2   period the employer fails to provide. Section 12 requires that: "No employer shall employ

3   any person for a work period of more than six (6) hours without a meal period of not less

4   than thirty (30) minutes, nor more than one (1) hour. Subsequent meal period for all

5   employees shall be called not later than six (6) hours after the termination of the

6   preceding meal period."

7      41.    Here, Defendants failed to apprise Plaintiff and all 17200 Class Members of

8   their rights associated with meal periods and rest breaks and failed to provide timely meal

9   periods and rest breaks.  On information and belief, prior to the filing of this lawsuit

10  Defendants have never paid a Plaintiff or 17200 Class Members one hour of pay at the

11  employees' regular rate of compensation for any workday in which a proper rest break

12  was not provided.  Plaintiff and all 17200 Class Members are entitled to restitution of the

13  sums owing to them on account of missed meal periods and rest breaks.

14     42.    Defendant had a pattern and practice of not providing compliant rest breaks

15  or meal periods or paying the one-hour of premium wages for each rest break violation to

16  which Plaintiff and §17200 Class Members was entitled.

17     43.    Defendants failed to properly notify Plaintiff and Members of the 17200

18  Class of their rights associated with meal periods and rest breaks.

19     44.    At all relevant times mentioned herein, section 226.7 of the Code provided:

20  (a)  As used in this section, "recovery period" means a cooldown period

21  afforded an employee to prevent heat illness.

22  (b)  An employer shall not require an employee to work during a meal or rest

23  or recovery period mandated pursuant to an applicable statute, or applicable

24  regulation, standard, or order of the Industrial Welfare Commission, the

25  Occupational Safety and Health Standards Board, or the Division of

26  Occupational Safety and Health.

27  (c)  If an employer fails to provide an employee a meal or rest or recovery

28  period in accordance with a state law, including, but not limited to, an

1    applicable statute or applicable regulation, standard, or order of the

2    Industrial Welfare Commission, the Occupational Safety and Health

3    Standards Board, or the Division of Occupational Safety and Health, the

4    employer shall pay the employee one additional hour of pay at the

5    employee's regular rate of compensation for each workday that the meal or

6    rest or recovery period is not provided.

7    Code § 226.7.

8        45.    At all relevant times mentioned herein, section 510(a) of the Code provided:

9        Eight hours of labor constitutes a day's work. Any work in excess of eight

10       hours in one workday and any work in excess of 40 hours in any one

11       workweek and the first eight hours worked on the seventh day of work in

12       any one workweek shall be compensated at the rate of at least one and one-

13       half times the regular rate of pay for an employee. Any work in excess of 12

14       hours in one day shall be compensated at the rate of no less than twice the

15       regular rate of pay for an employee. In addition, any work in excess of eight

16       hours on any seventh day of a workweek shall be compensated at the rate of

17       no less than twice the regular rate of pay of an employee. Nothing in this

18       section requires an employer to combine more than one rate of overtime

19       compensation in order to calculate the amount to be paid to an employee for

20       any hour of overtime work.

21   Code § 510.

22       46.    Plaintiff and certain Class and Collective Action Members were not timely

23   paid proper overtime wages to which they were entitled in violation of the FLSA and

24   Code §§ 510, 515 and 1194.  Both late payment and nonpayment of overtime wages for

25   all hours worked violates the overtime wage statute.  Defendants are also subject to the

26   civil penalties for which provision is made in Code § 558 by failing to pay Class and

27   Collective Action Members their overtime wages.

28       47.    At all relevant times mentioned herein, section 1194 of the Code provided:

22
FIRST AMENDED COMPLAINT

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Code § 1194.

48.    At all relevant times mentioned herein, section 2802 of the Code provided in part:

(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or duties . . . .

(b) All awards made by a court . . . for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions.  Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss.

(c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing rights granted by this section.

Code § 2802. Defendants failed to reimburse Plaintiff, Class and Collective Action Members similarly situated employees for necessary business expenses incurred in the performance of their duties, such as for the use of a personal cell phone and for motion picture production equipment and supplies.

49.    At all relevant times mentioned herein, section 558 of the Code provided:

Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating

1    hours and days of work in any order of the Industrial Welfare Commission

2    shall be subject to a civil penalty as follows:  (1) For any initial violation,

3    fifty dollars ($50) for each underpaid employee for each pay period for

4    which the employee was underpaid in addition to an amount sufficient to

5    recover underpaid wages.  (2) For each subsequent violation, one hundred

6    dollars ($100) for each underpaid employee for each pay period for which

7    the employee was underpaid in addition to an amount sufficient to recover

8    underpaid wages.  (3) Wages recovered pursuant to this section shall be paid

9    to the affected employee.

10    Code § 558.  Defendants are the employers or other persons acting on behalf of an

11    employer who violated, or caused to be violated the relevant sections of the Code

12    referenced herein.

13        50.    At all relevant times mentioned herein, section 558.1 of the Code provided:

14    (a) Any employer or other person acting on behalf of an employer, who

15    violates, or causes to be violated,  any provision regulating minimum wages

16    or hours and days of work in any order of the Industrial Welfare

17    Commission, or violates, or causes to be violated, Sections 203, 226, 226.7,

18    1193.6, 1194, or 2802, may be held liable as the employer for such violation.

19    (b) For purposes of this section, the term "other person acting on behalf of

20    an employer" is limited to a natural person who is an owner, director,

21    officer, or managing agent of the employer, and the term "managing agent"

22    has the same meaning as in subdivision (b) of Section 3294 of the Civil

23    Code.

24    (c) Nothing in this section shall be construed to limit the definition of

25    employer under existing law.

26    Code § 558.1.  Defendants' personnel were on the set of the Acura Production and

27    actively participated in the Production.

28

**COLLECTIVE-ACTION ALLEGATIONS**

51.     Plaintiff seeks to represent all nonexempt employees who worked for Defendants during the period beginning no earlier than three years prior to the filing hereof to the mailing of the FLSA Opt-In Notice (such persons are referred to hereafter as "Collective Action Members.").

52.     Plaintiff is similarly situated to the Collective Action Members in that Plaintiff and the Collective Action Members were employed by Defendants and in that Defendants did not pay Plaintiff and the Collective Action Members their overtime and/or minimum wages when due. Plaintiff's consent to an FLSA collective action is attached hereto as **Exhibit 1.**

53.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b).

54.     All Collective Action Members should be given notice and be allowed to give their consent in writing to participate in—in other words, to opt into—the collective action pursuant to 29 U.S.C. § 216(b).

55.     This action has been brought and may be properly maintained as a Collective Action under the provisions of the FLSA because there is a well-defined community of interest in the litigation and the identity of the members of the proposed Collective Action group is easily ascertainable.

56.     Defendants, as to Plaintiff and Collective Action Members, failed to comply with the FLSA and, accordingly, Defendants' failure to make timely payment entitles Plaintiff and each Collective Action Member to statutory damages and/or liquidated damages.

**CLASS-ACTION ALLEGATIONS**

~~49~~57.     With respect to persons employed in the State of California, Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff seeks to represent a "17200 Class" composed of and defined as follows:

1    For the period four years and 180 days prior to the filling of this Complaint to date,

2    all persons who were On-Set Communicators (such persons are referred to

3    hereafter as 17200 Class Members, and such period is referred to hereafter as the

4    17200 Class Period).

5    Plaintiff seeks to represent a "226 Class" composed of and defined as follows:

6    For the period one year prior to the filling of this Complaint to date, all persons

7    paid wages on account of services provided for Defendants in the production of

8    Motion Pictures (such persons are referred to hereafter as 226 Class Members, and

9    such period is referred to hereafter as the 226 Class Period).

10    Plaintiff seeks to represent a "Code Class" composed of and defined as follows:

11    For the period three years and 180 days prior to the filling of this Complaint to

12    date, all persons who were not provided with wages within seven days after

13    completion of their last workweek for RM (such persons are referred to hereafter

14    as Code Class Members, and such period is referred to hereafter as the Code Class

15    Period).

16    **A. Numerosity**

17    ~~50.~~58.    The potential members of each Class as defined are so numerous that joinder

18    of all the members of any Class is impracticable. The number of Class Members is

19    great, but not so great as to make the class unmanageable.  It, therefore, is

20    impractical to join each Class Member as a named plaintiff.  Accordingly,

21    utilization of a class action is the most economically feasible means of determining

22    the merits of this litigation.

23    ~~51.~~59. Despite the size of the proposed Classes, the Class Members are readily

24    ascertainable through an examination of the records that Defendants are required by law

25    to keep.  See Wage Order 12 at Para. 7 ("Records").  Likewise, the dollar amount owed

26    to each Class Member is readily ascertainable by an examination of those same records.

27    For example, with respect to Defendant's violations of section 226(a)(6) of the Code, the

28    damages owing to each Class Member equals the sum of $50 (for the initial wage

**Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 58 + Alignment: Left + Aligned at:  0.25" + Indent at:  0.51"

**Formatted:** Indent: Left:  0", First line:  0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 58 + Alignment: Left + Aligned at:  0.25" + Indent at:  0.51"

1   statement issued to the employee during the period commencing one year prior to the

2   filing of the Complaint) and the product of the number of further wage statements issued

3   to the employee and $100, with a per employee cap of $4,000.

4        **Commonality**

5        ~~52.~~60. There are questions of law and fact common to each Class that predominate

6   over any questions affecting only individual Class Members.

7        ~~53.~~61. These common questions of law and fact include, without limitation:

8        a.  Whether Defendants failed to pay all wages in a timely fashion in violation

9            of sections 201.3, 201.5, 203 and/or 204 of the Code.

10       b.  Whether Defendants' failure to provide accurate itemized wage statements

11           to each and every employee violates Code section 226(a).

12       c.  Whether Defendants untimely and/or nonpayment of wages give rise to

13           liquidated damages for failure to pay minimum wages under Code section

14           1194.2.

15       d.  Whether Defendants' failure to provide rest breaks to each employee

16           violates Code section 226.7.

17       e.  Whether the crew are temporary service employees as referenced in Code

18           section 201.3.

19       **Typicality**

20       ~~54.~~62. There is a well-defined community of interest in the questions of law and

21   fact common to the Class Members.

22       ~~55.~~63. The claims of the named Plaintiff are typical of the claims of each Class,

23   which claims all arise from the same general operative facts, namely, Defendants did not

24   compensate its employees as required by the Code and applicable Wage Order.  Plaintiff

25   and all members of the Classes sustained injuries and damages arising out of and caused

26   by Defendants in violation of laws, regulations that have the force and effect of law, and

27   statutes as alleged herein.  Plaintiff has no conflict of interest with the other Class

28   Members and is able to represent the Class Members' interests fairly and adequately.

27
FIRST AMENDED COMPLAINT

**Adequacy of Representation**

56.64. Plaintiff will fairly and adequately represent and protect the interests of the members of each Class. Counsel who represents Plaintiff is sufficiently competent and experienced in decades of litigation of large employment and other class actions, both in state and federal courts.  Neither Plaintiff nor his counsel have any conflict with the members of the Classes.

57.65. Plaintiff is an adequate class representative and has no known conflicts with any members of the Classes.  Plaintiff worked as an On-Set Communicator.  He seeks certification of three classes.

58.66. With respect to shortcomings alleged with respect to wage statements, Plaintiff seeks to represent a "226 Class" as the wage statements do not provide the data as required by Code §226 (a)(1), (5), (6) or (9).

59.67. With respect to the alleged tardy payment of final wages, Plaintiff seeks to represent a "Code Class." Late in the last century, motion picture producers secured as exemption from Code §201, requiring immediate payment of employees who have been laid off.  The revised statute permitted an additional twenty-four hours for payment of crew members when the production was concluded.  Motion picture companies ignored this slight advantage, instead routinely paying laid off crew in the regular pay cycle, or later, often, as here, many weeks after the work had been completed.  Litigation ensued,[3] resulting in an industry-wide settlement of the Greenberg case, after which further legislative relief was secured by employers in the entertainment industry. Section 201.5 of the Code was amended to permit payment of final wages "by the next regular payday." Code §201.5(b).  Thereafter, in reaction to Smith v. Superior Court, the commercial

_____
[3]  Bithell v. E.P. Mgmt. Servs., 2007 Cal. App. Unpub. LEXIS 9706, *3 (2006) ("On October 2, 2000, plaintiff Greenberg  filed this class action (the Greenberg claims). In the original complaint, plaintiff alleged that a purported defendant class of employers in the motion picture industry violated former Code section 201.5  (which the Legislature amended on May 19, 1998) by failing to pay discharged employees' wages due and owing within 24 hours after discharge.") Another, similar case against RM was, Alderson v. Avalon Payroll Services, Inc., Los Angeles Superior Court (BC347925).

**Formatted:** Indent: Left:  0", First line:  0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 58 + Alignment: Left + Aligned at:  0.25" + Indent at:  0.51"

industry secured a new statute, Code §201.3, permitting temporary services employers

such as RM to pay cast and crew in the week following completion of their services.

https://www.littler.com/new-california-paycheck-law-aimed-temp-industry-creates-risk-

broad-range-industries (last accessed June 25, 2022) and

https://www.jacksonlewis.com/resources-publication/californias-paycheck-rule-

temporary-workers-take-effect-new-years-day (last accessed June 25, 2022).

60.68. Finally, with respect to the rest break issues, Plaintiff seeks to represent a

"17200 Class." Plaintiff contends that since On-Set Communicators were required to and

did monitor their walkie-talkies and/or cell phones all day they are entitled to premium

wages for Defendants' failure to provide compliant rest breaks and meal periods.

Augustus v. ABM Security Services, Inc., 2 Cal.5th 257 (2016).

**Superiority of Class Action**

61.69. A class action is superior to other available means for the fair and efficient

adjudication of this controversy.  Individual joinder of all Class Members is not

practicable, and questions of law and fact common to the Class predominate over any

questions affecting only individual members of the Class.  Each member of the Class has

been damaged and is entitled to recovery by reason of Defendants' illegal policy and/or

practice of failing to pay hourly wages, failing to pay overtime wages, failing to provide

Class Members rest periods without legal compensation.  Class action treatment will

allow those similarly situated persons to litigate their claims in the manner that is most

efficient and economical for the parties and the judicial system. Plaintiff is unaware of

any difficulties that are likely to be construed in the management of this action that would

preclude its maintenance as a class action.  The disposition of all claims of the members

of the Class in a class action, rather than in individual actions, benefits the parties and the

Court.  The interest of the Class Members in controlling the prosecution of separate

claims against Defendants is small when compared with the efficiency of a class action.

**FIRST CAUSE OF ACTION**
(Continuing Wages, Code §§201.3, 201.5, 203 and/or 204
On Behalf of Plaintiff and Code Class Against All Defendants)

62.70.   Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

63.71.   Defendants employed Plaintiff and Code Class Action Members. Plaintiff and Code Class Members were not timely paid all wages accrued upon separation from employment.

64.72.   For example, with respect to services provided on Saturday, April 16, 2022, RM issued a wage statement to Plaintiff Shinjo, but not until on or after May 13, 2022, tardy by some three weeks.  Plaintiff and other similarly situated Class Members, paid later than the Friday after the prior Sunday to Saturday workweek during which they completed their last day of work for Defendants, are all entitled to the penalties for which provision is made by Code section 203.

65.73.   Defendants' failure to compensate Plaintiff and Code Class Members within the time for which provision is made by sections 201.3 and 201.5 of the Code, despite their knowledge of their obligation to do so, was and is "willful" as the word is used in section 203.

66.74.   Pursuant to section 203 of the Code, Plaintiff and Code Class Members are entitled to continuing wages from Defendants in an amount according to proof. Plaintiff and Code Class Members are also entitled to recover costs and reasonable attorneys' fees under section 218.5 of the Code.

**SECOND CAUSE OF ACTION**
(Failure to Provide Compliant Wage Statements or Pay Stubs, Code § 226(a)
On Behalf of Plaintiff and 226 Class Members Against Defendants)

67.75.   Plaintiff incorporates by reference each and every allegation set forth in this Complaint as though fully set forth herein.

68.76.   Defendants failed to provide Plaintiff and 226 Class Members with wage statements conforming to the requirements of section 226(a)(1), (5), (6) or (9) of the Code.

Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 58 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.51"

Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 58 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.51"

69. 77.    The foregoing was intentional misconduct of Defendants that injured

Plaintiff and 226 Class Members insofar as they were deprived of information to

which they were legally entitled, including but not limited to the required data,

such as gross and net wages earned.

70. 78.    The failure of Defendants to provide compliant wage statements violates

section 226(a) of the Code.  Accordingly, Plaintiff and 226 Class Members are

entitled to damages in an amount according to proof and costs and reasonable

attorney's fees in accordance with the provisions of Code section 226(e), all in a

sum according to proof.  Plaintiff is entitled to an amount according to proof of at

least $50, not including  interest thereon, reasonable attorneys' fees and cost of

suit.

### THIRD CAUSE OF ACTION
(Failure to Provide Rest Breaks, Code § 226.7 and IWC Wage Order 12)
Liquidated Damages On Behalf of Plaintiff and 17200 Class Against Defendants)

71. 79.    Plaintiff incorporates by reference each and every allegation set forth in this

Complaint as though fully set forth herein.

72. 80.    At all times herein relevant, sections 226.7 of the Code and IWC Wage

Order 12 provided that employees must receive rest periods of at the rate of ten

(10) minutes net rest time per four (4) hours worked, or major fraction thereof.

73. 81.    By its failure to provide required rest breaks to Plaintiff and 17200 Class

Members, Defendants willfully violated the provisions of Code sections 226.7 and

IWC Wage Order 12. The defense misconduct in this regard, as well as with meal

periods owed to other Aggrieved employees–depriving the workers of fully-

compliant meal periods and rest breaks so they might retain a sufficient degree of

repose and relaxation required to function at a high level – is unfair to the workers

and the general public as it is contrary to established public policy and may be

deemed unsafe, immoral, unethical, oppressive and unscrupulous.  By diminishing

one's opportunity to have a respite and take a breather, the defense policies cause

**Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 58 + Alignment: Left + Aligned at:  0.25" + Indent at:  0.51"

1  injury to Plaintiff, the members of the 17200 Class and the general public.  The

2  work here at issue is strenuous and quite frequently involves lengthy overtime,

3  taking place at set locations which require the workers to drive to and from the

4  place of work, locations for which public transport is utterly impractical and

5  leading to the possibility of traffic accidents and physical injury to completely

6  innocent members of the general public, as well as the Defendant's workers.  For

7  example, in the filming of the Acura commercial on April 16, 2022, Shinjo and

8  other members of the crew were required to work for more than eight hours on

9  most, if not all, of their workdays.

10  ~~74.~~82.    Plaintiff and 17200 Class Members were not permitted to leave the set of the

11  Production for any purported rest periods or meal breaks. They were required to

12  monitor and be available via walkie-talkie and/or cell phone at all times.

13  ~~75.~~83.    Because Defendants failed to properly provide the proper rest breaks or meal

14  periods, Defendants are responsible to Plaintiff and 17200 Class Members for one

15  hour of additional pay at their regular rate of compensation for each workday

16  during which they worked for four or more hours, pursuant to Code section 226.7

17  and IWC Wage Order.

18  ~~76.~~84.    As a result of the unlawful acts of Defendants, Plaintiff and 17200 Class

19  Members have been deprived of premium wages, and/or other compensation in

20  amounts to be determined at trial, and are entitled to recovery of such amounts, plus

21  interest thereon, and costs.

22  **FOURTH CAUSE OF ACTION**

23  (Damages for Unpaid Minimum Wages, Code §§ 1194, 1194.2 and 1198
   On Behalf of Plaintiff and Code Class Members Against All Defendants)

24  ~~77.~~85.    Plaintiff realleges and incorporates herein by reference the allegations

25  contained in this Complaint as though fully set forth herein.

26  ~~78.~~86.    Plaintiff and the 17200 Class Members worked many hours for Defendants,

27  without compensation for work performed, as required by law. Both late payment

28  and non-payment of minimum wages violate the state statute requiring the

Formatted: Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 58 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.51"

payment of a minimum hourly wage, the former giving rise as here to a claim for liquidated damages.

79.87.   Plaintiff and 17200 Class Members are entitled to recover liquidated damages under section 1194.2 of the Code in an amount according to proof. Plaintiff and 17200 Class Members are also entitled to recover costs and reasonable attorneys' fees under section 1194 of the Code.

## FIFTH CAUSE OF ACTION
(Unfair Business Practices Business and Professions Code section 17200 *et seq.* On Behalf of Plaintiff and 17200 Class Against Defendants)

80.88.   Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

81.89.   Business and Professions Code section 17200 *et seq.* prohibits acts of unfair competition, including any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 *et seq.* Plaintiff alleges that Defendants engaged in unfair business practices in California by the above-described failure to timely pay all premium wages due on account of the failure of Defendants to provide proper rest breaks and/or meal periods to On-Set Communicators. Under this Cause of Action Plaintiff seeks restitution of these unpaid wages, for his account and for the 17200 Class.

82.90.   Defendants' violation of California wage and hour laws as herein articulated constitutes a business practice for the reasons set forth above and because Defendants' aforementioned acts and omissions were done repeatedly over a significant period of time, and in a systematic manner, to the detriment of Plaintiff, 17200 Class Members, their families and the general public. On Set Communicators are routinely deprived of rest breaks, all to the detriment of public safety, as hereinabove described.

83.91.   As a result of Defendants' unfair and unlawful business practices, Defendants have reaped unfair and illegal profits during the relevant time period

herein at the expense of Plaintiff and the Collective Action Members and members
of the public.  Defendants should be made to disgorge its ill-gotten gains and to
restore them to Plaintiff and 17200 Class Members.

84.92.    The actions of Defendants entitle Plaintiff to seek the remedies available
under section 17200 *et seq.*  Plaintiff seeks full restitution of said amounts from
Defendants, as necessary and according to proof, to restore any and all amounts—
including interest—withheld, acquired, or converted by Defendants by means of
the unfair practices complained of herein.  Plaintiff, on behalf of himself, as well
as on behalf of the general public, further seeks attorney's fees and costs pursuant
to sections 218.5 of the Code and 1021.5 of the Code of Civil Procedure.

## SIXTH CAUSE OF ACTION
(Fair Labor Standards Act On Behalf of Plaintiff and Collective
Action Members Against All Defendants)

85.93.    Plaintiff realleges and incorporates herein by reference the allegations
contained in this Complaint as though fully set forth herein.

86.94.    Plaintiff is informed and believes, and on that basis alleges, that Defendants
are employers engaged in an enterprise in interstate commerce pursuant to the Fair
Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

87.95.    Plaintiff was not timely paid his wages. Plaintiff and Collective Action
Members worked many hours each day during their employment as herein alleged.

88.96.    Under the FLSA, Plaintiff and Collective Action Members are entitled to
recover from Defendants their liquidated damages for hours worked, as well as
costs and attorney's fees.

89.97.    Defendants failed to compensate Plaintiff and Collective Action Members
as required by the FLSA.

90.98.    Defendants' violations were willful and intentional.

91.99.    Plaintiff and Collective Action Members are entitled to damages for unpaid
wages and/or the associated liquidated damages in an amount to be proven at trial.

FIRST AMENDED COMPLAINT

**Formatted:** Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 58 + Alignment: Left + Aligned at:  0.25" + Indent at:  0.51"

92.100.   Plaintiff  brings this claim on a collective-action basis pursuant to the FLSA. The FLSA permits an employee to bring an action for unpaid wages on "behalf of himself . . . and other employees similarly situated," so long as all similarly situated employees "give[] [their] consent in writing to become . . . a party."  29 U.S.C. § 216(b). On information and belief, none were timely paid all wages as required by sections 201, 202, 203 or 204 of the Code.

**SEVENTH CAUSE OF ACTION**
(PAGA On Behalf of the State of California, Plaintiff and
Aggrieved Employees Against All Defendants)

93.101.   Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

94.102.   Pursuant to section 2699.3(a)(1) of the Code, by certified mail posted in on July 12,of 2022, Plaintiff will give gave written notice by online filing to the California Labor and Workforce Development Agency ("LWDA") of the specific provisions of the Code alleged to have been violated by Defendant, including the theories set forth in this Complaint. At that same time, pursuant to section 2699.3(a)(1)(B) Plaintiff will send sent by certified mail a filing fee of $75 to the LWDA. Also on that day, Plaintiff will give gave written notice by certified mail to Defendant of the specific provisions of the Code alleged to have been violated by Defendant.

95.103.   Under PAGA, "[t]he agency shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the alleged violation within 60 calendar days of the postmark date of the notice received pursuant to paragraph (1). Upon receipt of that notice or if no notice is provided within 65 calendar days of the postmark date of the notice given pursuant to paragraph (1), the aggrieved employee may commence a civil action pursuant to Section 2699." Code § 2699.3(a)(2)(A). If appropriateSince, after more than 65 calendar days have passed since the notice was sent, and no notice was provided

by the LWDA, and Plaintiff may amend this civil action pursuant to Code Section 2699.

96.104.    Plaintiff is informed and believes and thereon alleges that Defendant has routinely failed to provide Plaintiff and other Aggrieved Employees with proper itemized wage statements, final wages, minimum wages, and premium wages owing on account of requiring On Set Communicators to monito their walkie-talkies and/or cell phones throughout the day, even during down time and faux rest breaks and/or meal periods. The foregoing caused Plaintiff to suffer actual injury sufficient to support Article III standing.

97.105.    Plaintiff alleges that Defendant violated PAGA through violations of the Code and through violations of IWC Wage Order 12. "PAGA actions can serve to *indirectly* enforce certain wage order provisions by enforcing *statutes* that require compliance with wage orders (e.g., § 1198, which prohibits longer work hours than those fixed by wage order or employment under conditions prohibited by a wage order)." Thurman v. Bayshore Transit Mgmt., Inc., 203 Cal. App. 4th 1112, 1132 (2012).

98.106.    Plaintiff is an "aggrieved employee" under PAGA, as he was employed by Defendants during the applicable statutory period and suffered the Code Violations set forth herein. Accordingly, he may seeks to recover on behalf of himself, the LWDA and all other current and former Aggrieved Employees of Defendant, the civil penalties for which provision is made by PAGA, as well as reasonable attorney's fees and costs.

99.107.    Plaintiff may seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in Arias v. Superior Court, 46 Cal.4th 969 (2009). Therefore, class certification of the PAGA claims is not required.

100.108.  Plaintiff may seeks to recover civil penalties pursuant to PAGA for violations of the following Code provisions:

a.  failure to timely pay wages, including wages owing on account of underpayment of premium wages owing on account of inappropriate rest breaks and/or meal periods as well as accrued and unpaid overtime in violation of Code §§ 201.3, 201.5, 203, 204, 210;

b.  failure to provide itemized wage statements to Aggrieved Employees in violation of Code §§ 226(a) and 226.3;

c.  failure to timely pay minimum wages to Aggrieved Employees in violation of Code  §§ 510, 558, 1194, 1197 and/or 1198.

101.109.  With respect to violations of Code §§ 510, Code § 558 imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) for initial violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages, and one hundred dollars ($100) for subsequent violations for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

102.110.  With respect to violations of Code § 226(a), section 2699(f) of the Code provides for a default civil penalty when one is not otherwise provided.

103.111.  With respect to violations of Code § 246(h), Code § 248.5 imposes a civil penalty in addition to any other penalty provided by law of fifty dollars ($50) per aggrieved employee for the first violation, not to exceed ($4,000) per aggrieved employee for all violations of Code § 246 and section 2699(f) of the Code provides for a default civil penalty when one is not otherwise provided.

104.112.  With respect to violations of Code § 1174, Code § 1174.5 imposes a civil penalty of $500.

**WHEREFORE**, Plaintiff prays judgment as follows:

1.    That the Court certify a Class and Collective Action.

2.    That, under the First Cause of Action, it be adjudged that the failure of Defendants to make payment of Plaintiff's and Code Class Members' wages was in

violation of sections 201.3, 201.5 and/or 204 of the Code, and was "willful" as that word is used in section 203 of the Code, and that the Court enter judgment against Defendants in favor of Plaintiff and Code Class Members. That judgment be entered in favor of Plaintiff and Code Class Members in an amount prescribed by section 203 of the Code, and costs and reasonable attorneys' fees in accordance with the provisions of Code section 218.5, all in a sum of at least $575,000.

3.     That, under the Second Cause of Action, this Court enter judgment in favor of Plaintiff and 226 Class Members and award them their damages, penalties, and costs of suit, all according to proof pursuant to section 218.5 and other relevant sections of the Code, in an amount of at least $1,000.

4.     That, under the Third Cause of Action, this Court enter judgment in favor of Plaintiff and 17200 Class Members and award them their damages, penalties, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Code, all in an amount of at least $10,000.

5.     That, under the Fourth Cause of Action, this Court enter judgment in favor of Plaintiff and 17200 Class Members and award them their damages, penalties, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Code, all in an amount of at least $10,000.

6.     That, under the Fifth Cause of Action, this Court enter judgment in favor of Plaintiff and Code Class Members in the amount of liquidated damages for tardy payment of minimum wages according to proof, including interest thereon, reasonable attorneys' fees and cost of suit, and enter judgment against Defendants in the amount of damages according to proof, interest thereon, reasonable attorneys' fees and cost of suit, pursuant to section 218.5, 1194, 1194.2 and other relevant sections of the Code.

7.     That, under the Sixth Cause of Action, this Court enter judgment in favor of Plaintiff and Collective Action Members against all Defendants in an amount according to proof, interest thereon, costs and reasonable attorney's fees in accordance with the Fair Labor Standards Act.

8.    That, with respect to the Seventh Cause of Action, this ~~action may be amended so that this~~ Court ~~may~~ enter judgment in favor of Plaintiff and Aggrieved Employees against all Defendants in an amount according to proof, interest thereon, costs and reasonable attorney's fees in accordance with the PAGA, against Defendant.

9.    For such further relief as the Court may order, attorney's fees, costs, and

interest pursuant to Code sections 218.5 and 218.6, and Code of Civil Procedure section 1021.5, in an amount according to proof.

DATED: May~~July 11~~10, ~~2022~~2023                    HARRIS & RUBLE

*Alan Harris*

Alan Harris
*Attorney for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INDEX OF EXHIBITS**

**Exhibit 1** – Plaintiff Shinjo's FLSA Opt-In

Formatted: Left